2012 OK 44

STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,

v.

Andrew Raymond TOWNSEND, Respondent.

Nos. SCBD–5783, OBAD–1809.

Supreme Court of Oklahoma.

May 8, 2012.

Debbie L. Maddox, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.

Andrew Raymond Townsend, Tulsa, Oklahoma, Pro se.

WATT, J.

¶ 1 Originally, the Bar Association filed a complaint against the respondent under Rules 6, 6.2A,[1] and 10,[2] Rules Governing

1. Rule 6.2A, Rules Governing Disciplinary Pro-

ceedings, 5 O.S.2011, Ch. 1, App. 1–A [Allowing

Disciplinary Proceedings, 5 O.S.2011, Ch. 1, App. 1–A, charging the respondent with ten counts of professional misconduct. Although the parties agreed to the entrance of an order of interim suspension, Townsend did not admit the truth of the misconduct allegations.[3]

¶ 2 The hearing before the trial panel proceeded as a Rule 6 matter, any allegations of incapacity being dismissed.[4] During the hearing process, Townsend admitted: missing court dates resulting in rulings adverse to clients; failing to communicate; lack of diligence; and not returning files to clients in a timely manner.

¶ 3 In consideration of the facts and upon *de novo* review,[5] we determine that the clear and convincing evidence[6] demonstrates that: 1) Townsend engaged in misconduct warranting discipline; 2) the respondent is no longer under an incapacity which would preclude him from practicing law; and 3) the attorney's conduct will conform to the high standards required of the Bar Association. The attorney's misconduct warrants a public rep-

rimand and the imposition of costs in the amount of $1,193.91.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 4 Townsend was admitted to the practice of law in April of 1998. Ten years later, in early 2008, the Bar Association began receiving grievances regarding the attorney's: failure to communicate with clients; missing of court dates, resulting in the entrance of dismissals, summary adjudications, and award of attorney fees to opposing counsel; not returning files; refusing timely to refund unearned fees; and not completing or instigating promised legal representation. The exhibits from the hearing held on November 16, 2011, also reflect that Townsend did not respond timely to Bar Association inquiries regarding the allegations.

¶ 5 It is undisputed that during the same period that complaints were being received, Townsend was involved in significant personal and professional situations which resulted in his entering an extended period of debili-

for an emergency interim suspension where it appears that an attorney is personally incapable of practicing law and conduct poses an immediate threat of harm.].

2. Rule 10, Rules Governing Disciplinary Proceedings, 5 O.S.2011, Ch. 1, App. 1–A [Suspension for personal incapacity to practice law.].

3. The original complaint was filed on March 2, 2010 pursuant to Rules 6, 6.2A, and 10, Rules Governing Disciplinary Proceedings, 5 O.S.2011, Ch. 1, App. 1–A. Pursuant to this Court's order of February 16, 2012, a second complaint was filed conforming to the evidence presented at the November 16, 2011 hearing. The original complaint contained allegations of the violation of Rule 5.2, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A [Failure to respond fully and fairly to grievance.] and 10.1 [Practicing law while under an incapacity.], along with the allegations identical to those later raised in the amended complaint. The amended complaint was filed pursuant to Rule 6, Rules Governing Disciplinary Proceedings, 5 O.S.2011, Ch. 1, App. 3–A. The allegations of the amended complaint encompass violations of the Rules of Professional Conduct, 5 O.S.2011, Ch. 1, App. 3–A, specifically: Rule 1.1 [Competent representation, legal knowledge, skill, thoroughness, and reasonable preparation.]; Rule 1.3 [Diligence and promptness in representation.]; Rule 1.4

[Reasonable consultation with and prompt reply to client inquires.]; Rule 1.15 [Safekeeping of clients' property.]; Rule 1.16 [Declining or withdrawing from representation upon occurrence of mental or physical condition altering the lawyer's abilities to represent the client.]; and Rule 8.4 [Violation of Rules of Professional Conduct, engaging in conduct involving dishonesty, fraud, or misrepresentation, and engaging in conduct prejudicial to the administration of justice.]. A single allegation of violation of the Rules Governing Disciplinary Proceedings, 5 O.S.2011, Ch. 1, App. 1–A, is alleged: Rule 1.3 [Commission of act contrary to prescribed standards of conduct.]. Although the amended complaint does not contain allegations of failure to respond, Rule 5.2, Rules Governing Disciplinary Proceedings, this note, supra, Townsend admitted in the hearing before the trial panel that he did not timely respond to grievance inquiries.

4. See, Transcript of Hearing before Trial Panel, November 16, 2011, at p. 9.

5. *State ex rel. Oklahoma Bar Ass'n v. McCoy*, 2010 OK 67, ¶ 2, 240 P.3d 675; *State ex rel. Oklahoma Bar Ass'n v. Pacenza*, 2006 OK 23, ¶ 2, 136 P.3d 616; *State ex rel. Oklahoma Bar Ass'n v. Garrett*, 2005 OK 91, ¶ 17, 127 P.3d 600.

6. Rule 11.4, Rules Governing Disciplinary Proceedings, 5 O.S.2011, Ch. 1, App. 1–A; *In re*

tating depression and anxiety severe enough to bring on panic attacks. Factors contributing to the attorney's mental state included: a difficult divorce involving child custody issues, resulting in the attorney receiving an unsatisfactory visitation schedule; the suicide of a close friend for which, to some extent, Townsend thought himself responsible; an extended illness of an office mate increasing the attorney's work load; and an unplanned office split in which the partnering attorney took all the office furniture, the client files, the computer, had the office telephone number transferred, and drained all cash from bank accounts leaving Townsend with business-related bills and no resources to pay them.

¶ 6 The Bar Association filed its formal complaint on March 2, 2010. On March 25, 2010, this Court entered an agreed order of interim suspension, without the attorney's having admitted any incapacity limiting his ability to practice or the truth of the pending disciplinary charges. Pursuant to Rule 10.12, Rules Governing Disciplinary Proceedings, 5 O.S.2011, Ch. 1, App. 1–A,[7] all documents were filed in a non-public docket maintained under the supervision of the Chief Justice.

¶ 7 On August 26, 2011, after having been suspended some twenty-two (22) months,[8] Townsend filed a petition for reinstatement in the office of the Clerk of the Supreme Court. An order issued from the Chief Justice on August 31, 2011, recasting the petition for reinstatement as a "motion to lift interim suspension." The order directed the Bar Association to set the matter for a hearing before the trial panel either on allegations that the attorney was personally incapable of practicing law or was subject to discipline. The Bar Association responded on September 12, 2012, objecting to the recasting based on due process concerns for Townsend and prior proceedings in similar causes. At the same time, the Bar Association took full responsibility for any failure in properly facilitating the matter and renewed a request that all proceedings remain confidential. An order issued by the Chief Justice on October 5, 2011, clarified that the burden of proof of either incapacity or misconduct lies with the Bar Association and again directed that the matter proceed either as a Rule 10[9] incompetency proceeding or as a Rule 6[10] disciplinary proceeding. In either case, the order provides that the burden of proof is on the Bar Association to establish the allegations by clear and convincing evidence.[11]

¶ 8 The record from the hearing before the trial panel on November 16, 2011 reflects that the Bar Association chose to proceed under Rule 6 and that Townsend was not claiming any disability and understood the consequences of the proceeding.[12] The Bar Association suggested a private reprimand along with the payment of costs as the appropriate discipline. Townsend agreed. After taking the matter under advisement before concluding the hearing, the trial panel recommended the same, but made the recommendation of a private reprimand contingent on the respondent maintaining monthly contact for a year with Lawyers Helping Lawyers.[13] Townsend indicated that he had no problem

Reinstatement of Munson, 2010 OK 27, ¶ 12, 236 P.3d 96.

7. Rule 10.12, Rules Governing Disciplinary Proceedings, 5 O.S.2011, Ch. 1, App. 1–A providing: "Except where disciplinary proceedings are involved (Rule 10.4), all proceedings under this Rule 10 shall remain confidential and shall not be a matter of public record, unless otherwise ordered by the Supreme Court. A separate, non-public docket and files shall be maintained for this purpose, under the supervision of the Chief Justice."

8. Transcript of Hearing, November 16, providing in pertinent part at pp. 9–10: "... MS. MADDOX: ... Mr. Townsend's decision to self suspend is now I think we're look-

ing at 22 months of time that has spent on bettering himself and his position...."

9. Rule 10.1, Rules Governing Disciplinary Proceedings, see note 3, supra.

10. Rule 6.1, Rules Governing Disciplinary Proceedings, 5 O.S.2011, Ch. 1, App. 1–A.

11. *State ex rel. Oklahoma Bar Ass'n v. Whitebook*, 2010 OK 72, ¶ 3, 242 P.3d 517.

12. See, Transcript of Hearing, November 16, 2001, Andrew Raymond Townsend testifying at p. 20.

13. See, Transcript of Hearing, November 16, 2011, providing in pertinent part at pp. 222–24.

with the continued contact with his Lawyers Helping Lawyers advisor.[14] Nevertheless, the trial panel report, filed on January 17, 2012, does not contain the recommendation regarding continued counseling. Rather, it recommends: 1) the imposition of a private reprimand; 2) if any suspension be imposed, it run from the time of the voluntary interim suspension; and 3) the payment of costs.

¶ 9 The Bar Association filed its brief in chief on February 9, 2012. The briefing cycle was completed on March 9, 2012 with the Bar Association's notice that it would waive the filing of a reply brief as the respondent did not present timely an answer brief.

### JURISDICTION AND STANDARD OF REVIEW

■■■ ¶ 10 It is this Court's nondelegable, constitutional responsibility to regulate both the practice and the ethics, licensure, and discipline of the practitioners of the law. The duty is vested solely in this department of government.[15] Our determinations are made *de novo*.[16] We bear the ultimate responsibility for deciding whether misconduct has occurred and, if so, what discipline is warranted. Neither the finding of facts of the trial panel nor its view of the evidence or the credibility of witnesses bind this Court. The recommendation is merely advisory.[17] The same is true when the parties stipulate

to misconduct and a recommendation for discipline.[18] Before this Court will discipline an errant attorney, misconduct must be demonstrated by clear and convincing evidence.[19] To make this determination, we must be presented with a record sufficient to permit an independent, on-the-record review for the crafting of appropriate discipline.[20] The record submitted is sufficient for this Court to make the required decisions.

### Count I—McCluskey

¶ 11 McCluskey hired Townsend to represent him in a personal injury matter after being involved in a car accident. When settlement attempts failed, the attorney filed a lawsuit. Things appear to have proceeded routinely until December 4, 2008 when the cause was set for disposition regarding a trial date. Townsend did not appear and failed to respond to later filed motions or to inquiries from his client. In February of 2009, the cause was dismissed without prejudice. Although McCluskey was successful in obtaining new counsel, he was left with several outstanding medical bills causing him significant financial hardship. Townsend recognized McCluskey's complaints were valid and expressed remorse for the difficulties and frustrations he caused his client and the client's family. He acknowledged that his conduct did not meet professional standards by failing to appear at the scheduled hearing, not diligently prosecuting his client's case,

14. Transcript of Hearing, November 16, 2011, providing in pertinent part at p. 225:

"... MR. TOWNSEND: I'd be more than happy to meet with Chris Giles, who I've already been meeting with once a month, if that would be satisfactory.
MS. LOVING: Instead of Lawyers Helping Lawyers?
MR. TOWNSEND: Well, he was the counselor recommended to me through Lawyers Helping Lawyers and I mean, I could certainly continue to meet with him...."

15. Title 5 O.S.2011 § 13; *State ex rel. Oklahoma Bar Ass'n v. Farrant*, 1994 OK 13, ¶ 13, 867 P.2d 1279; *Tweedy v. Oklahoma Bar Ass'n*, see note 38, infra.

16. *State ex rel. Oklahoma Bar Ass'n v. Combs*, 2008 OK 96, ¶ 11, 202 P.3d 830; *State ex rel. Oklahoma Bar Ass'n v. Pacenza*, see note 5, su-

pra; *State ex rel. Oklahoma Bar Ass'n v. Garrett*, see note 5, supra.

17. Rule 6.15, Rules Governing Disciplinary Proceedings, 5 O.S.2011, Ch. 1, App. 1-A; *State ex rel. Oklahoma Bar Ass'n v. Besly*, 2006 OK 18, ¶ 2, 136 P.3d 590; *State ex rel. Oklahoma Bar Ass'n v. Taylor*, 2003 OK 56, ¶ 2, 71 P.3d 18.

18. *State ex rel. Oklahoma Bar Ass'n v. Combs*, see note 16, supra; *State ex rel. Oklahoma Bar Ass'n v. Besly*, see note 17, supra; *State ex rel. Oklahoma Bar Ass'n v. McGee*, 2002 OK 32, ¶ 20, 48 P.3d 787.

19. *State ex rel. Oklahoma Bar Ass'n v. Whitebrook*, see note 11, supra; *State ex rel. Oklahoma Bar Ass'n v. Rogers*, 2006 OK 54, ¶ 9, 142 P.3d 428.

20. *State ex rel. Oklahoma Bar Ass'n v. Schraeder*, 2002 OK 51, ¶ 27, 51 P.3d 570; *State ex rel.*

neglecting to keep his client informed, and failing to respond to Bar inquiries in a timely fashion.

### Count III—Brown/Fabela[21]

¶ 12 Fabela hired the respondent in an automobile negligence case. Townsend filed a lawsuit on behalf of the client in June of 2007. In September of the same year, the cause was dismissed without prejudice for failure to diligently prosecute, specifically, the defendant was not served. Fabela made numerous attempts to reach Townsend over a period of three years. When he did finally reach him, Townsend didn't inform the client of the dismissal. Finally, Fabela hired new counsel to prosecute the matter. On June 14, 2008, Fabela's grandmother, Betty Brown, filed the complaint on his behalf. Townsend explained that the lawsuit was essentially filed to preserve the statute of limitations and to facilitate settlement. He agreed that he did not move forward in the cause as he should have and did not pursue settlement negotiations.

### Count IV: Comeaux[22]

¶ 13 On October 18, 2007, Comeaux hired Townsend to enter an appearance in an ongoing contract dispute. Approximately a month later, she paid him one thousand dollars ($1,000.00) as a retainer. Townsend did not enter an appearance in the cause or undertake any steps to settle the matter. After attempting to reach him on more than twenty (20) occasions without response, Comeaux filed a grievance on September 30, 2008. At the hearing, Townsend didn't really remember the specifics of his agreement with the client. After he received the grievance, he returned the retainer and sent Comeaux an apology letter explaining his situation regarding the divorce, suicide, office breakup, depression, and anxiety. · Earlier he had advised her to retain new counsel. Townsend was certain that he had received the griev-

### Count V—Armington

¶ 14 Armington hired Townsend in November of 2007 and filed a grievance against him on January 21, 2009. Armington needed assistance in a personal injury case which the attorney took on a contingency fee basis. The client heard nothing from Townsend until January of 2008. Thereafter, Armington reached the attorney's former partner who supplied him with an additional phone number. Townsend contacted the client in August of 2008, telling him that he was preparing a settlement package which would be mailed to the insurance adjuster. Armington heard nothing else from the attorney. No settlement was ever pursued. Armington suffered significant hardship as a result of delays resulting in his inability to pay related medical bills. The attorney did not perform the work for which he was hired, misled his client regarding the progress of the case, and abandoned his client. When Townsend did finally respond to the Bar Association's inquiries, he indicated that although he had done some work in the cause, he was unable to complete the case due to his depression and anxiety issues. The attorney filed a lien release so that any settlement reached could be disbursed to his former client.

### Count VI—Jones

¶ 15 Jones hired the respondent to complete a last will and testament and trust, paying him $1,125.00 on January 23, 2008. Jones heard nothing else from Townsend and filed a grievance with the Tulsa County Bar Association which forwarded the cause to the Bar Association on April 15, 2008. The Bar Association contacted the respondent's former partner. Guten explained that he had accidently taken some client files from Townsend's office and those belonging to Jones were included. Guten assisted Jones in executing the documents without charge. Town-

*Oklahoma Bar Ass'n v. Perceful,* 1990 OK 72, ¶ 5, 796 P.2d 627.

**21.** The trial panel found the evidence insufficient to sustain Count II–Pieper. We agree except to the extent that the attorney admitted failing to respond to Bar Association inquiries in violation of Rule 5.2, Rules Governing Disciplinary Proceedings, see note 3, supra.

**22.** Comeaux's name is misspelled throughout the hearing transcript as "Como."

send failed to communicate with his client, abandoned him, and retained a fee, a portion of which was unearned.

## Count VII—Hayes Grievance

¶ 16 Hayes paid Townsend $150.00 to write a letter to the Oklahoma Medical Examiner's Office regarding her daughter's death. When she heard nothing back from him and could not contact him, she filed a complaint with the Tulsa County Bar Association on December 9, 2008 which was referred to the Bar Association. Working with the Bar Association, Townsend eventually sent a refund check and letter of apology to Hayes. Nevertheless, he failed to represent his client's interests, did not communicate with Hayes, did not do the work for which he was hired, and failed to return an unearned fee in a timely manner.

## Count VIII—Loyd

¶ 17 In May of 2008, Townsend was successful in getting the parental rights of a minor child Loyd wanted to adopt terminated. He did not follow through and assist the Loyds in perfecting the adoption. When the couple was finally able to reach him in October of that year, he explained that he had family problems which were interfering with his law practice and referred them to a former law partner. Townsend did not forward the file to the attorney but did refund his retainer. The attorney failed to provide competent representation in a diligent manner or to communicate with his client in a timely fashion.

## Count IX—Land

¶ 18 On April 3, 2008, Land hired Townsend to probate his wife's estate, paying him $1,500.00. Land became concerned when he heard nothing from the respondent and could not contact him. When he checked with the Court Clerk's Office in December, he was told no cause had been filed on his behalf. Land filed a complaint with the Tulsa County Bar Association which was forwarded to the Bar Association in March of 2009. Townsend took a fee from his client for which he apparently provided no services, failed to communicate, and abandoned the cause. The fee was ultimately refunded.

## Count X—Martin

¶ 19 Martin hired Townsend to write a demand letter to a former employer in a matter involving the client's wrongful termination. The understanding was that if the demand was not met, the attorney would file suit. When his demands were ignored, Martin began trying, unsuccessfully, to contact the respondent. He had left some particularly important, original documents in Townsend's possession. Martin hired new counsel who also was unable to retrieve the materials. Townsend failed to file anything on Land's behalf, did not return files in his keeping, and abandoned his client's interests.

¶ 20 **a. Clear and convincing evidence was presented of the attorney's: lack of a current mental disability; professional misconduct; and willingness to comply with the high standards required of the practitioners of the law in Oklahoma.[23]**

¶ 21 There is no question that Townsend's transgressions violated multiple standards

---

**23.** Orders issued in this cause should not confuse the practicing bar as to reinstatement procedures where incapacity and misconduct are coupled. Just as is the case here, the attorney in *State ex rel. Oklahoma Bar Ass'n v. Albert*, 2007 OK 31, 163 P.3d 527, agreed to the entry of an order of interim suspension. Unlike Albert, Townsend did not admit misconduct or incapacity. Nevertheless, Townsend did seek the confidentiality afforded to respondents in disciplinary proceedings regarding the capacity to practice law. Rule 10.12, Rules Governing Disciplinary Proceedings, see note 7, supra. See also, respondent's Objection to Inclusion of Records in SCBD No. 5783 providing in pertinent part that

"representations by counsel for the Oklahoma Bar Association were made that this matter would be held confidential and Respondent proceeded in this matter of good faith that the matter would remain confidential" and that "[t]he panel's ruling after hearing the evidence determined that the Respondent should not be subject to public censure. The filing of the record found in OBAD No. 1809 in the public record would countermand the spirit of the panel's ruling by, for all purposes, making the matter public...." *Albert* made it clear that Rule 10.11, Rules Governing Disciplinary Proceedings, 5 O.S.2011 Ch. 1, App. 1-A, directs that the procedures, insofar as they are applicable for resum-

set out in the rules which govern the practice of law in Oklahoma.[24] It is also obvious that the respondent was under an incredible amount of stress.

¶ 22 Townsend has two sons. During the time of the misconduct, he was going through a difficult divorce resulting in time with the children being limited. He felt guilty for failing his sons. Originally, Townsend had three attorneys in his firm. One of the lawyers experienced an extended illness during which she was absent from the office, resulting in work loads being increased on the two remaining attorneys. Becoming frustrated with the situation, the second attorney left the practice, leaving Townsend responsible for his own clients and those of the remaining lawyer. To add insult to injury, the attorney for whom Townsend had been covering came in and took all the office furniture, files, computer, and other equipment, and drained the firm's operating accounts, leaving Townsend with bills but no assets. During this period, Townsend had already begun to withdraw and was spending most of his time locked in his apartment. One friend tried to call him every day over several weeks, but Townsend could not bring himself to pick up the phone. His guilt and withdrawal became worse when he was informed that the friend had committed suicide. Townsend began to have panic attacks whenever he attempted to go into his office or to answer phone calls.

¶ 23 The respondent presented proof from his licensed marriage and family therapist acting through Lawyers Helping Lawyers that when he came to him in November of 2008, he was suffering from acute depression and anxiety. At that time, the attorney was unable to deal with day-to-day activities of returning phone calls, going into the office, communicating with clients, or resolving work-related problems. He utilized alcohol as a crutch during this time period but did not present symptoms of dependence. On the day of the hearing, the therapist testified that he felt those issues had been resolved and that Townsend had acquired the skills, along with a system of support, to allow him to return to the practice of law without relapse.

¶ 24 The Bar Association investigator testified that she never felt that Townsend was simply ignoring inquiries regarding his misconduct. Rather, she always thought the misconduct was tied to a depressive mental illness caused by a situational event or events going on in his life during the critical time period. The investigator was pleased when Townsend willingly became involved with his therapist on her recommendation that he seek assistance dealing with his mental state through Lawyers Helping Lawyers. When she made inquiries of the complaining parties, many of them felt that Townsend should be allowed to return to the practice of law.[25] The same recommendation has been made by the Assistant General Counsel prosecuting the case and the trial panel.

¶ 25 Townsend has expressed true remorse for his actions. He has communicated apologies to all clients involved and has returned all fees related to the complaints, even where he may have been entitled to some form of recompense. He willingly participated in Lawyers Helping Lawyers and agreed to do the same in the future. An Assistant United States Attorney testified that Townsend was revered in the legal community. His mother, close friend, and therapist all opined that, with the experience of depression and anxiety, he has built up a system of support which should assist him in not returning to

ing the practice of law after the removal of a personal incapacity, are the same procedures as those provided in Rule 11, following suspension upon disciplinary grounds.

**24.** See note 3, supra.

**25.** See, Transcript of Hearing, November 16, 2011, Cheryl Comeaux testifying in pertinent part at p. 153 that the respondent deserved a second chance. Dorothy Brown wrote a letter dated November 14, 2011, in which she indicat-

ed that she thought Townsend deserved to have his license reinstated and that she would seek his services in the future. See, Complainant's Exhibit 88. Kenneth Land felt that the time off from the practice of law and participation with a therapist had been a good experience for Townsend and was not concerned that he would repeat the same mistakes. The same sort of statements were made by Nila Hayes, Erica Loyd, and Landon Fabela. See, Transcript of Hearing, November 16, 2011, pp. 199–200.

his formerly debilitating state of mind. The attorney has participated in continuing legal education seminars and stayed current on the law and legal developments. He is current on all Bar-related fees.

¶ 26 The factors this Court considers on reinstatement are: present moral fitness; consciousness of the wrongfulness of actions bringing disrepute on the profession; extent of rehabilitation; seriousness of the original misconduct; conduct subsequent to discipline; time elapsed since the original discipline; petitioner's character, maturity, and experience; and present competence in legal skills.[26] **The factors weighing most heavily when a suspension arises out of incapacity are: 1) the extent of rehabilitation of the affliction attributable to the incapacity; 2) the conduct subsequent to the suspension and treatment received for the condition; and 3) the time which has elapsed since the suspension.**[27]

¶ 27 It has been in excess of two years since the agreed interim suspension was entered. Upon *de novo* review,[28] we find that clear and convincing evidence[29] demonstrates that: 1) Townsend engaged in misconduct warranting discipline; 2) respondent

is no longer under an incapacity which would preclude him from practicing law; and 3) respondent's conduct will conform to the high standards required of the Bar Association.

### ¶ 28 b. The attorney's misconduct warrants public reprimand and the imposition of costs.

¶ 29 Before addressing the appropriate discipline to be imposed for Townsend's misconduct, we find it necessary to comment on the manner in which the Bar Association handled this cause. The Bar Association made promises to Townsend it had no authority to make. Townsend had every right under the disciplinary rules to expect that as **long as the matter remained simply a Rule 10 proceeding and this Court did not order otherwise,** all proceedings would remain confidential.[30] However, the Bar Association apparently guaranteed confidentiality throughout the disciplinary process without any authority for doing the same[31] under circumstances where Rule 10.11[32] and Rule 11.1,[33] construed together, specifically provide that a lawyer suspended because of personal incapacity shall[34] file a petition for

---

**26.** *Matter of Reinstatement of Rhoads*, 2005 OK 53, ¶ 3, 116 P.3d 187; *Matter of Reinstatement of Gassaway*, 2002 OK 48, ¶ 3, 48 P.3d 805; *Matter of Reinstatement of Kamins*, 1988 OK 32, ¶ 20, 752 P.2d 1125.

**27.** *State ex rel. Oklahoma Bar Ass'n v. Albert*, see note 23, supra.

**28.** *State ex rel. Oklahoma Bar Ass'n v. McCoy*, see note 5, supra; *State ex rel. Oklahoma Bar Ass'n v. Pacenza*, see note 5, supra; *State ex rel. Oklahoma Bar Ass'n v. Garrett*, see note 5, supra.

**29.** Rule 11.4, Rules Governing Disciplinary Proceedings, see note 6, supra; *In re Reinstatement of Munson*, see note 6, supra.

**30.** Rule 10.12, Rules Governing Disciplinary Proceedings, see note 7, supra.

**31.** See, Complainant's Response Regarding January 18, 2012 Order, filed on February 26, 2012 providing in pertinent part:

"... 3) Complainant represented to Respondent at the time Respondent consented to the interim suspension and Rule 20, RGDP, filings that all pleadings and associated records and exhibits would be kept confidential per Rule 10, RGDP.

4) Any procedural shortcomings in these proceedings are the fault of Complainant. Respondent should not be prejudiced by having sensitive mental health treatment information and other confidential records made public...."

**32.** Rule 10.11, Rules Governing Disciplinary Proceedings, 5 O.S.2011 Ch. 1, App. 1–A providing in pertinent part:

"(a) Procedures for reinstatement of a lawyer suspended because of personal incapacity to practice law shall be, insofar as applicable, the same as the procedures for reinstatement provided in Rule 11 following suspension upon disciplinary grounds. The petition shall be filed with the Clerk of the Supreme Court and the petitioner will be required to supply such supporting proof of personal capacity as may be necessary...."

**33.** Rule 11.1, Rules Governing Disciplinary Proceedings, see note 53, infra.

**34.** The term "may" is ordinarily construed as permissive while "shall" is commonly considered to be mandatory. *MLC Mort. Corp. v. Sun America Mort. Co.*, 2009 OK 37, fn. 17, 212 P.3d 1199; *Osprey LLC v. Kelly–Moore Paint Co., Inc.*, 1999 OK 50, ¶ 14, 984 P.2d 194; *Shea v. Shea*, 1975 OK 90, ¶ 10, 537 P.2d 417.

reinstatement with the Clerk of the Supreme Court, a publicly accessible docket.[35]

¶30 **The Supreme Court created the Oklahoma Bar Association and delegated the duty to investigate grievances filed against Oklahoma lawyers to the Association's General Counsel. This Court promulgates the rules under which the Bar Association functions.[36] It is the official arm of the Court when acting on its behalf.[37] Every aspect of the Bar Association's adjudicative process is supervised by our** *de novo* **consideration.[38]**

¶31 This Court determines the appropriate discipline to be administered to preserve public confidence in the bar. Our responsibility is not to punish but to inquire into and gauge a lawyer's continued fitness to practice law, with a view to safeguarding the interest of the public, of the courts, and of the legal profession. Discipline is imposed to maintain these goals rather than as a punishment for the lawyer's misconduct.[39] Disciplinary action is also administered to deter the attorney from similar future conduct and to act as a restraining vehicle on others who might consider committing similar acts.[40] Discipline is fashioned to coincide with the discipline imposed upon other lawyers for like acts of professional misconduct.[41] Although this Court strives to be even-handed and fair in disciplinary matters, discipline must be decided on a case-by-case basis because each situation involves unique transgressions and mitigating factors.[42]

¶32 In similar causes involving attorneys determined to be incapable of practicing law, the breadth of discipline has been from public censure to suspensions of two years and one day.[43] Such suspensions are

**35.** See, Rule 10.11, Rules Governing Disciplinary proceedings, note 33, supra; Rule 11, Rules Governing Disciplinary Proceedings, note 53, infra. All briefs, motions, and other papers are filed with the Clerk of the Supreme Court. Rule 1.4, Supreme Court Rules, 12 O.S.2011, Ch. 15, App. 1. Court dockets are also available online *via* the Oklahoma Supreme Court Network at www.oscn.net.

**36.** Preamble, Rules Creating and Controlling the Oklahoma Bar Association, 5 O.S.2011, Ch. 1, App. 1 providing in pertinent part:
"... The Supreme Court of Oklahoma does hereby create and continue an association of the members of the Bar of the State of Oklahoma to be known as the Oklahoma Bar Association, and promulgates the following rules for the government of the Association and the individual members thereof."

**37.** Section 1, Art. 1, Rules Creating and Controlling the Oklahoma Bar Association, 5 O.S.2011, Ch. 1, App. 1 providing:
"The Oklahoma Bar Association is an official arm of this Court, when acting for and on behalf of this Court in the performance of its governmental powers and functions."
*Tweedy v. Oklahoma Bar Ass'n,* 1981 OK 12, ¶4, 624 P.2d 1049.

**38.** *State ex rel. Oklahoma Bar Ass'n v. Whitworth,* 2008 OK 22, ¶49, 183 P.3d 984; *State ex rel. Oklahoma Bar Ass'n v. Bolton,* see note 42, infra. Despite our concerns with the unauthorized promise of confidentiality made by the Bar Association, we are impressed with the integrity and empathy of the investigator, Dorothy Walos, in this cause and her interest in seeing that Townsend receive guidance through Lawyers Helping Lawyers. See, Transcript of Hearing, November

16, 2011, Andrew Raymond Townsend testifying in pertinent part at p. 50 and providing that "Dorothy, I think, did her best to try to prevent me from having to sit here today." See also, Transcript of Hearing, November 16, 2011, p. 13, the Assistant General Counsel acknowledging that "Dorothy is the one to be credited with getting Mr. Townsend a very—a very paralyzed Mr. Townsend, to Lawyers Helping Lawyers and initiating something that might get him some help."

**39.** *State ex rel. Oklahoma Bar Ass'n v. Phillips,* 2002 OK 86, ¶21, 60 P.3d 1030; *State ex rel. Oklahoma Bar Ass'n v. Bedford,* 1997 OK 83, ¶18, 956 P.2d 148; *State ex rel. Oklahoma Bar Ass'n v. English,* 1993 OK 68, ¶12, 853 P.2d 173.

**40.** *State ex rel. Oklahoma Bar Ass'n v. Pacenza,* see note 5, supra; *State ex rel. Oklahoma Bar Ass'n v. Badger,* 1995 OK 113, ¶13, 912 P.2d 312; *State ex rel. Oklahoma Bar Ass'n v. Hall,* 1977 OK 117, ¶12, 567 P.2d 975.

**41.** *State ex rel. Oklahoma Bar Ass'n v. Patterson,* 2001 OK 51, ¶29, 28 P.3d 551; *State ex rel. Oklahoma Bar Ass'n v. Eakin,* 1995 OK 106, ¶0, 914 P.2d 644; *State ex rel. Oklahoma Bar Ass'n v. Bolton,* 1994 OK 53, ¶16, 880 P.2d 339.

**42.** *State ex rel. Oklahoma Bar Ass'n v. Doris,* 1999 OK 94, ¶38, 991 P.2d 1015; *State ex rel. Oklahoma Bar Ass'n v. Rozin,* 1991 OK 132, ¶10, 824 P.2d 1127.

**43.** *State ex rel. Oklahoma Bar Ass'n v. McCoy,* see note 5, supra [Suspension of two years and one day, with payment of costs, was warranted for attorney's misconduct including accepting cases

**1280**

tantamount to disbarment in that the suspended lawyer must follow the same procedures for readmittance as would a disbarred attorney.[44]

¶ 33 Mitigating circumstances may be considered in the process of assessing the appropriate quantum of discipline.[45] When mental or physical conditions are presented as mitigating factors for assessment of one's culpability, there must be a causal relationship between the conditions and the professional misconduct.[46] Though emotional, psychological, or physical disability may serve to reduce the actor's ethical culpability, it will not immunize one from imposition of disciplinary measures that are necessary to protect the public.[47]

¶ 34 We are impressed with the Bar Association's investigator's tenacity in directing the attorney to a therapist through Lawyers' Helping Lawyers and with Townsend's willingness to seek and benefit from counseling sessions and appropriate medications. The majority of Townsend's wronged clients recommended that he be given a second chance. The attorney has repeatedly and sincerely expressed remorse for his actions.[48] Considering the attorney's misconduct, discipline imposed in similar causes, and the mitigating circumstances, we determine that the attorney should be disciplined by public reprimand. Townsend indicated to the trial panel that he would be happy to continue seeing his therapist through Lawyers Helping Lawyers.[49] We do not require the sessions as a condition of reinstatement.

while under a disability, lack of diligence, failure to communicate, failure to return unearned fees, filing of untimely responses to grievance inquiries, and conduct involving dishonesty, fraud, deceit, or misrepresentation.]; *State ex rel. Oklahoma Bar Ass'n v. Beasley*, 2006 OK 49, 142 P.3d 410 [Considering attorney's alcohol addition, attorney's failure to perform legal services, failure to communicate, and failure to respond to Bar Association investigations warranted suspension of two years and one day.]; *State ex rel. Oklahoma Bar Ass'n v. Hummel*, 2004 OK 30, 89 P.3d 1105 [Attorney subject to clinical depression suspended for one year for failure to communicate, failure to turn over client files, entering into settlement agreement without authority, and failure to return unearned funds where previously having received two public reprimands.]; *State ex rel. Oklahoma Bar Ass'n v. Bolusky*, 2001 OK 26, 23 P.3d 268 [Misrepresentation to three clients, failure to respond to Bar Association on multiple occasions, when accompanied by the stabilized condition of attorney's attention deficit disorder warranted suspension of two years and one day.]; *State ex rel. Oklahoma Bar Ass'n v. Whitworth*, see note 39, supra [Attorney violating rules relating to competence, reasonable diligence, keeping a client informed, and conduct prejudicial to administration of justice, while using drugs, warranted two-year suspension.]; *State ex rel. Oklahoma Bar Ass'n v. Southern*, 2000 OK 88, 15 P.3d 1 [Attorney disabled by untreated B12 disorder disciplined by public censure and imposition of probation for repeated neglect of clients and their cases and failure to cooperate in grievance process.]; *State ex rel. Oklahoma Bar Ass'n v. Wright*, 1997 OK 119, 957 P.2d 1174 [Despite evidence of depression, misconduct in nine estate matters, failure to act with reasonable diligence and promptness, failure to communicate with clients, charging unreasonable fees, and failure to respond to allegations and grievances filed by Bar Association warrant

suspension for two years and one day.]; *State ex rel. Oklahoma Bar Ass'n v. Donnelly*, 1992 OK 164, 848 P.2d 543 [Public reprimand is appropriate sanction for lacking diligence and promptness in representing client, not keeping client informed, deceiving client, and not revealing alcoholism in previous disciplinary proceeding.].

44.  Rule 11.1, Rules Governing Disciplinary Proceedings, see note 53, infra; *State ex rel. Oklahoma Bar Ass'n v. Pacenza*, see note 5, supra.

45.  *State ex rel. Oklahoma Bar Ass'n v. McCoy*, see note 5, supra; *State ex rel. Oklahoma Bar Ass'n v. Schraeder*, see note 20, supra; *State ex rel. Oklahoma Bar Ass'n v. Colston*, 1989 OK 74, ¶ 20, 777 P.2d 920.

46.  *State ex rel. Oklahoma Bar Ass'n v. McCoy*, see note 5, supra; *State ex rel. Oklahoma Bar Ass'n v. Schraeder*, see note 20, supra; *State ex rel. Oklahoma Bar Ass'n v. Giger*, 2001 OK 96, ¶ 15, 37 P.3d 856.

47.  *State ex rel. Oklahoma Bar Ass'n v. McCoy*, see note 5, supra; *State ex rel. Oklahoma Bar Ass'n v. Schraeder*, see note 20, supra.

48.  See, Transcript of Hearing, November 16, 2011, at p. 154.

49.  Transcript of Hearing, November 16, 2011, Andrew Raymond Townsend testifying in pertinent part at p. 225:

"... MR. TOWNSEND: I'd be more than happy to meet with Chris Giles, who I've already been meeting with once a month, if that would be satisfactory.... [Chris Giles] was the counselor recommended to me through Lawyers Helping Lawyers and I mean, I could certainly meet with him...."

Nevertheless, we would suggest that those meetings take place on a regular basis for twelve months following the date of this opinion.[50]

¶ 35 The attorney recognizes his responsibility to pay the fees and expenses of the investigation,[51] specifically agreeing to cover the costs of the original and **one copy of any transcripts.**[52] The Bar Association filed a motion to assess costs of $1,657.41. Included in that figure is transcript expense of $1,390.50, for an original and **two certified copies.**[53] Because Townsend is responsible for the costs of the original and only one copy, we determine that he should pay $927.00 of that expense.[54] Therefore, the attorney is hereby ordered to pay $1,193.91 for the costs of these proceedings as a prerequisite to reinstatement.

## CONCLUSION

¶ 36 Rule 10 proceedings are confidential until this Court orders otherwise and a separate, non-public docket is maintained for that purpose under the supervision of the Chief Justice.[55] Here, the Rule 10 allegations were originally joined with the Rule 6 allegations but were dismissed at the time of the hearing before the trial panel. Although the Bar Association lacked the authority to make promises of blanket confidentiality in this matter, it did make such representations to Townsend. Therefore, in order that the respondent may be publicly reprimanded, we direct that confidentiality be suspended to the extent of publishing this opinion. The record and the transcripts shall remain on the non-public docket.[56]

¶ 37 Townsend stands publicly reprimanded. We additionally impose costs of $1,193.91 and encourage the respondent to consider continued contact with his therapist through Lawyers Helping Lawyers.

### REINSTATEMENT GRANTED; DISCIPLINED BY PUBLIC REPRIMAND, AND COSTS IMPOSED.

TAYLOR, C.J., COLBERT, V.C.J., KAUGER, WATT, WINCHESTER, REIF, COMBS, GURICH, JJ., concur.

EDMONDSON, J., concurs in part, dissents in part.

50. We do not make the meeting a condition of reinstatement as any relapse suffered by the respondent would make him subject to suspension. Nevertheless, we also view his agreement to continue with the sessions laudable. See, *State ex rel. Oklahoma Bar Ass'n v. Albert*, note 23, supra.

51. Rule 6.16, Rules Governing Disciplinary Proceedings, 5 O.S.2011, Ch. 1, App. 1–A.

52. Rule 11.1, Rules Governing Disciplinary Proceedings, 5 O.S.2011, Ch. 1, App. 1–A providing in pertinent part:

"(a) The applicant shall file an original and ten copies of a petition for reinstatement with the Clerk of the Supreme Court ...
(c) The applicant shall pay a fee to cover the expenses of investigating and processing the application as determined by the Professional Responsibility Tribunal. In addition, the applicant shall pay the cost of the original and one copy of the transcript of any hearings held in connection with the application. . . . ."

53. Complainant's Exhibit E, dated December 19, 2011, and attached to the Application to Assess Costs filed on January 17, 2012.

54. See, Rule 11.1, Rules Governing Disciplinary Proceedings, note 52, supra; *Reinstatement of Moss*, 1993 OK 16, ¶ 6, 848 P.2d 564.

55. Rule 10.12, Rules Governing Disciplinary Proceedings, 5 O.S.2011, Ch. 1, App. 1–A, providing:

"Except where disciplinary proceedings are involved (Rule 10.4), all proceedings under this Rule 10 shall remain confidential and shall not be a matter of public record, unless otherwise ordered by the Supreme Court. A separate, non-public docket and files shall be maintained for this purpose, under the supervision of the Chief Justice."
*State ex rel. Oklahoma Bar Ass'n v. McBride*, 2007 OK 91, ¶ 32, 175 P.3d 379.

56. *State ex rel. Oklahoma Bar Ass'n v. McBride*, see note 55, supra.