OSCN Found Document:STATE ex rel. OKLAHOMA BAR ASSOCIATION v. DUNIVAN

 

 
 

 
 STATE ex rel. OKLAHOMA BAR ASSOCIATION v. DUNIVAN
2018 OK 101
Case Number: SCBD-6604
Decided: 12/18/2018
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2018 OK 101, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

STATE OF OKLAHOMA ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,
v.
JOHN DOUGLAS DUNIVAN, Respondent.
BAR DISCIPLINARY PROCEEDING
Â¶0 Respondent, attorney John Douglas Dunivan, entered an Alford plea to one misdemeanor count of violating a victim protective order in Blaine County District Court. Pursuant to Rule 7 of the Rules Governing Disciplinary Proceedings, Complainant, the Oklahoma Bar Association, initiated a disciplinary case, and this Court entered an order of interim suspension on December 18, 2017. Dunivan sought and was provided a hearing before a trial panel of the Professional Responsibility Tribunal (PRT) on the limited issues of mitigation and imposition of appropriate discipline. The PRT recommended a one-year suspension, to be followed by another year of deferred suspension subject to various probationary requirements. Dunivan urges that public censure is instead the appropriate measure of discipline. We hold that the record supports suspension of Dunivan's license to practice law for a period of one year, to be imposed retroactively to the date on which Dunivan's interim suspension began, after which time Dunivan may be reinstated without probationary conditions.
INTERIM SUSPENSION PREVIOUSLY ORDERED;
RESPONDENT SUSPENDED FOR ONE YEAR, RETROACTIVE
TO THE DATE OF INTERIM SUSPENSION; COSTS IMPOSED
Loraine Dillinder Farabow, First Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant
-and-
Jack S. Dawson and Amy L. Alden, Miller Dollarhide, P.C., Oklahoma City, Oklahoma, for John Douglas Dunivan, Respondent
GURICH, V.C.J.
Â¶1 This matter is before the Court for imposition of final discipline under Rule 7, Rules Governing Disciplinary Proceedings (RGDP), 5 O.S.2011 ch. 1, app. 1-A. In this case, we are tasked with crafting suitable discipline for an attorney who--in the course of a contentious child-custody dispute with a former spouse--violated the conditions of a victim protective order by sending a flurry of harassing and inappropriate text messages. Although Dunivan did not physically harm or threaten his ex-wife (or act in a manner directly detrimental to the interests of any client), Dunivan's general course of conduct--both before and after entering his Alford plea
[1] to the misdemeanor violation of the protective order--evinces a pattern of disregard for complying with judicial orders. An attorney must follow the rules, and Dunivan (who previously received a private reprimand from the Professional Responsibility Commission of the Oklahoma Bar Association in 2010) too frequently has not. Under the circumstances, a standalone verbal rebuke from this Court risks being too easily brushed aside. We suspend Dunivan from the practice of law for one year.
Facts and Procedural History
Â¶2 Dunivan was admitted to the Oklahoma Bar Association (OBA) in 2002. In recent years, he has maintained a general law practice in Perry, Oklahoma. Dunivan married his now-former wife, Ginger Swann, in 2008. In May of that year, Dunivan was involved in a verbal altercation with Swann's ex-husband during a child-custody exchange in Texas. Because of that encounter, the ex-husband filed a police report and--later on--a grievance against Dunivan with the OBA. Dunivan was not charged in the Texas incident. In March 2009, however, Dunivan was arrested in Bartlesville for driving under the influence. As a result of both the Texas-based grievance and Dunivan's self-reported DUI arrest, the OBA's Professional Responsibility Commission issued a private reprimand to Dunivan in August 2010. The Professional Responsibility Commission conditioned Dunivan's reprimand upon his successful completion of anger-management counseling and a substance-abuse assessment.
Â¶3 While married, Dunivan and Swann had one child together: S.D., a son, who is now nine years old. Shortly after S.D.'s birth, Dunivan and Swann divorced. It is abundantly clear from the record that their divorce--and, in particular, their subsequent battle for custody of S.D.--was extraordinarily bitter, protracted, and painful for both parties. As hostilities escalated between Dunivan and Swann, the Blaine County District Court issued a protective order on December 4, 2014 that prohibited Dunivan from contacting Swann, with the sole exception that "[t]he parties may send texts and/or emails to each other concerning visitation with their minor child." The protective order also required Dunivan to remain away from Swann's residence in Watonga.
[2]
Â¶4 On March 25, 2016, following one of many disagreements over his visitation with S.D., Dunivan sent a series of 17 text messages to Swann. These text messages have been variously--and accurately--described as "churlish," "vexatious," "ugly," "vulgar and mean-spirited," "unkind and immature," "out of line," and "written in anger and haste." After receiving the texts, Swann filed a report with the Watonga Police Department, alleging a violation of the protective order. As noted by the investigating officer, Dunivan's text messages to Swann "were of a harassing nature and had very little to do with Mr. Dunivan's visits with their son." Thereafter, Dunivan was charged in Blaine County District Court (Case No. CM-2016-83) with a misdemeanor protective-order violation, in contravention of 22 O.S.2011 Â§ 60.6. The feuding with Swann did not end there, and Dunivan was later charged with two more protective-order violations in Blaine County in June and December 2016--once for allegedly sending Swann another string of bizarrely harassing text messages in which he appeared to impersonate their young son (Blaine County District Court Case No. CM-2016-117), and then for allegedly approaching her off-limits Watonga residence in a vehicle with his then-girlfriend (Blaine County District Court Case No. CM-2016-210).
Â¶5 On December 4, 2017, Dunivan entered an Alford plea to misdemeanor violation of a protective order in Blaine County District Court Case No. CM-2016-83, stemming from his text-message harassment of Swann on March 25, 2016. As part of a negotiated plea agreement, the State dismissed the two remaining Blaine County cases charging Dunivan with the additional protective-order violations. Dunivan received a one-year deferred sentence, subject to the conditions--as relevant here--that he would obtain a psychiatric evaluation, refrain from committing any further protective-order violations, and "not possess, consume or purchase alcoholic beverages."
Â¶6 On the same day, Dunivan self-reported his misdemeanor Alford plea and deferred sentence to the OBA. In compliance with RGDP Rule 7.2, the OBA duly forwarded to this Court copies of the information, plea, and sentence. On December 18, 2017, we entered an order of immediate interim suspension--in accordance with RGDP Rule 7.3--in State ex rel. Oklahoma Bar Association v. Dunivan, 2017 OK 101 (for publication in OBJ only).
Â¶7 To put the matter bluntly, the OBA suspected the behavior leading to Dunivan's protective-order violation might be attributed to problems with alcohol, anger, or impulse control.
[3] At the OBA's request, Dunivan promptly submitted to evaluations by a psychologist (Dr. Terese Hall) and a substance-abuse specialist (Dr. Julio Rojas). In her psychological report of January 12, 2018, Dr. Hall concluded that Dunivan's "test results as a whole do not raise concern about alcohol abuse," but went on to suggest that he "honestly monitor his alcohol intake to ensure that drinking does not become problematic." In addressing the protective-order violation, Dr. Hall observed in a January 29, 2018 supplemental report that "[t]he text messages that Mr. Dunivan sent were in the context of [a] protracted and deeply frustrating custody battle. This does not excuse their inappropriate nature, but it helps to explain them." Additionally, Dr. Hall stated that she was "not aware of any impulsive or aggressive behavior on his part in other contexts, so I do not believe there is a pattern of behavior that would indicate deeper problems."
Â¶8 For his part, Dr. Rojas largely concurred in Dr. Hall's assessment. Although Dr. Rojas believed that Dunivan suffered from a moderate alcohol-use disorder in the past, he agreed that he is currently fit to practice law. Dr. Rojas was troubled, though, by Dunivan's admission that he had consumed alcohol about ten days prior to his evaluation--a clear violation of the terms of Dunivan's deferred sentence, which unequivocally prohibited him from possessing or consuming alcoholic beverages.
[4] Consequently, Dr. Rojas supplemented his evaluation with a list of further recommendations for Dunivan that included at least one year of alcohol-related counseling and therapy.
Â¶9 On June 5, 2018, the PRT conducted a hearing on the issues of mitigation and appropriate discipline. Three witnesses testified on Dunivan's behalf: two lawyers (including an assistant district attorney) who are familiar with his character and reputation within his community; and his church pastor. Dunivan's witnesses testified that he had gone through a remarkably wrenching divorce, during which time he was routinely denied visitation with his son by Swann. The witnesses further testified they do not believe he has a problem with alcohol. In sum, Dunivan's witnesses persuasively characterized him as a decent and capable man whose legal abilities are valued--and needed--in his rural community.
Â¶10 Dunivan testified next in his own behalf. As described by the PRT, he "presented compelling testimony that he is remorseful, shameful [sic], embarrassed and sorry that he has brought disrepute on the legal profession and apologizes for his past conduct." He explained to the PRT that his suspension from the practice of law has been "life-altering" because, as he put it, "the biggest part of my life is gone." He stated that he is now "a much more humble person." Dunivan also testified that, as of this year, he has finally obtained sole primary custody of S.D., and that this fact "would probably be the highest motivation that could be presented" to him to become "a better man in the future."
Â¶11 Although finding "commendable" the mitigating evidence offered by Dunivan--and acknowledging that his conduct toward his ex-wife did not involve physical violence or abuse, nor that his "misconduct had any effect on any client"--the PRT found that Dunivan's disregard of the protective order constituted professional misconduct. Accordingly, the PRT recommended in its report of August 6, 2018 that Dunivan be suspended from the date on which this Court entered its order of immediate interim suspension--December 18, 2017--through the remaining period of his one-year deferred sentence in Blaine County--that is, until December 4, 2018. Following that, the PRT recommended an additional year of suspension for Dunivan, to be deferred subject to: (a) his compliance with the conditions of the deferred sentence in the Blaine County case, including the total prohibition on alcohol use; (b) signing and maintaining a contract with Lawyers Helping Lawyers, coupled with regularly scheduled contact with a mentor; (c) waiver of confidentiality, such that Lawyers Helping Lawyers could notify the OBA of any default by Dunivan; and (d) continued compliance with the Rules of Professional Conduct.
Â¶12 In its brief filed with this Court, the OBA recommends we adopt the full disciplinary recommendation of the PRT or else, "at a minimum," suspend Dunivan from the practice of law for the duration of his Blaine County deferred sentence. Dunivan, in turn, submits that a public reprimand from this Court is sufficient to satisfy the goals of discipline and deterrence.
Standard of Review
Â¶13 This Court is vested with exclusive, original, and nondelegable jurisdiction over attorney-discipline cases. State ex rel. Okla. Bar Ass'n v. Hart, 2014 OK 96, Â¶ 6, 339 P.3d 895, 898. As we have announced in numerous prior decisions, "[t]he ultimate responsibility for deciding whether misconduct has occurred and what discipline is warranted if misconduct is found rests with [this Court] in the exercise of our exclusive original jurisdiction in bar disciplinary matters." State ex rel. Okla. Bar Ass'n v. Cox, 2011 OK 73, Â¶ 10, 257 P.3d 1005, 1008 (quoting State ex rel. Okla. Bar Ass'n v. Taylor, 2003 OK 56, Â¶ 2, 71 P.3d 18, 21) (alteration in Cox).
Â¶14 Factual and legal determinations of the PRT are not binding on us, and any recommendations are merely advisory.
[5] State ex rel. Okla. Bar Ass'n v. Drummond, 2017 OK 24, Â¶ 17, 393 P.3d 207, 214. Likewise, we must ensure the OBA has established charges of misconduct by clear and convincing evidence. State ex rel. Okla. Bar Ass'n v. Mansfield, 2015 OK 22, Â¶ 14, 350 P.3d 108, 113. As in other bar-disciplinary matters, we review each aspect of a Rule 7 proceeding de novo.[6] State ex rel. Okla. Bar Ass'n v. Cooley, 2013 OK 42, Â¶ 4, 304 P.3d 453, 454.
Analysis
Â¶15 RGDP Rule 7 provides the mechanism for conducting disciplinary proceedings on a summary basis. This provision is invoked when a lawyer "has been convicted or has tendered a plea of guilty or nolo contendere pursuant to a deferred sentence plea agreement in any jurisdiction of a crime which demonstrates such lawyer's unfitness to practice law." RGDP Rule 7.1. Summary-disciplinary proceedings are commenced by submission of certified copies of the conviction or deferred sentence to the Chief Justice of this Court. RGDP Rule 7.2. A deferred sentence is deemed conclusive evidence of an attorney's commission of a criminal act in a disciplinary case initiated under RGDP Rule 7. Id.; see also State ex rel. Okla. Bar Ass'n v. Kerr, 2012 OK 108, Â¶ 3, 291 P.3d 198, 199.
Â¶16 A Rule 7 case requires our determination of two principal issues: (1) whether an attorney's conviction or deferred sentence demonstrates an unfitness to practice law; and, if it does, (2) the appropriate level of discipline based on all facts and circumstances. Cooley, 2013 OK 42, Â¶ 2, 304 P.3d at 454. At the time this Court received the certified copy of Dunivan's deferred sentence, RGDP Rule 7.3 required us to immediately issue an order suspending the attorney on an interim basis.[7] "Implicitly, the order of interim suspension carries with it a finding of unfitness to practice law; however, we are obliged to again weigh the criminal conduct, together with all evidence bearing on the commensurate level of discipline." Drummond, 2017 OK 24, Â¶ 20, 393 P.3d at 214. Upon a showing of good cause, this Court may set aside an order of temporary suspension.[8]
Â¶17 Although a criminal conviction does not, by itself, establish an attorney's unfitness to practice law under RGDP Rule 7, our decisions in such disciplinary cases are guided by Rule 8.4 of the Oklahoma Rules of Professional Conduct (ORPC). ORPC Rule 8.4(b) defines as professional misconduct any criminal act that adversely reflects on an attorney's "honesty, trustworthiness, or fitness as a lawyer." State ex rel. Okla. Bar Ass'n v. Conrady, 2012 OK 29, Â¶ 7, 275 P.3d 133, 136. "Fitness to practice law, as contemplated by ORPC Rule 8.4(b), 'encompasses more than an absence of detriment to specific clients.'" Id. Â¶ 10, 275 P.3d at 137 (quoting State ex rel. Okla. Bar Ass'n v. Aston, 2003 OK 101, Â¶ 11, 81 P.3d 676, 678). Comment 2 to Rule 8.4 is instructive:
Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty, breach of trust, or serious interference with the administration of justice are in that category. A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation.
(emphasis added).
Â¶18 Our task in this case is to evaluate Dunivan's Alford plea to the protective-order violation to determine whether that crime demonstrates unfitness to practice law and, if so, to impose appropriate discipline. Dunivan has not disputed that his deferred sentence indicates such unfitness--and he is correct. The PRT found that Dunivan's "criminal behavior" violated ORPC Rule 8.4 in general. We think that Dunivan's actions most directly implicate ORPC Rule 8.4(b), which defines as professional misconduct the commission of "a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." (emphasis added).
Â¶19 Violation of a victim protective order--a criminal act--indicates "a willful indifference for judicial orders and a disregard for the rule of law." Hart, 2014 OK 96, Â¶ 12, 339 P.3d at 899. Dunivan's disobedience of a valid judicial order stands "as a direct reflection of [his] unfitness to practice law." Id. Moreover, the record presented to us convincingly discloses that the March 25, 2016 incident that gave rise to Dunivan's prosecution in Blaine County District Court Case No. CM-2016-83 does not represent the only occasion on which he violated the district court's protective order forbidding contact with his ex-wife--as indicated by the dismissed counts (by negotiated plea agreement) alleging subsequent protective-order violations by Dunivan in Blaine County District Court Case No. CM-2016-117 and Case No. CM-2016-210.
Â¶20 We acknowledge the fact that Dunivan has endured an intensely difficult period in his personal life. But an attorney must adhere to a higher standard of conduct, notwithstanding the issues he is facing in his private life. "Membership in the Bar is a privilege burdened with conditions. A fair private and professional character is one of those conditions. Compliance with that condition is essential at the moment of admission and it is equally essential afterwards." State ex rel. Okla. Bar Ass'n v. Murdock, 2010 OK 32, Â¶ 14, 236 P.3d 107, 113--114. As Dunivan himself aptly expressed at the PRT hearing: "[W]hen a person is a lawyer, they're a lawyer all the time. It's not just in the courtroom or not just in the office. It's wherever they go. And the public sees that." Under the circumstances presented, we find Dunivan should be disciplined under RGDP Rule 7, RGDP Rule 1.3,[9] and ORPC Rule 8.4(b).
Discipline
Â¶21 Our next task is to determine the level of discipline commensurate with the facts presented by Dunivan's case. Although we use our prior decisions as a gauge for imposing attorney discipline, the particular facts and circumstances of each case will dictate its resolution. Hart, 2014 OK 96, Â¶ 15, 339 P.3d at 900. "[D]iscipline must be decided on a case-by-case basis because each situation involves unique transgressions and mitigating factors." State ex rel. Okla. Bar Ass'n v. Townsend, 2012 OK 44, Â¶ 31, 277 P.3d 1269, 1279.
Â¶22 The paramount goal in bar-disciplinary matters is not to punish an attorney for prior conduct, but to "safeguard[] the interest of the public, of the courts, and of the legal profession." State ex rel. Okla. Bar Ass'n v. Albert, 2007 OK 31, Â¶ 11, 163 P.3d at 532--533. Nonetheless, we must also weigh the deterrent effect of our discipline on Dunivan and the Oklahoma Bar as a whole. Taylor, 2003 OK 56, Â¶ 22, 71 P.3d at 29; see also Townsend, 2012 OK 44, Â¶ 31, 277 P.3d at 1279 ("Disciplinary action is also administered to deter the attorney from similar future conduct and to act as a restraining vehicle on others who might consider committing similar acts."). Finally, it is this Court's responsibility to weigh not only those factors that warrant imposing discipline, but also any evidence that mitigates the severity of the professional misconduct. State ex rel. Okla. Bar Ass'n v. Stewart, 2003 OK 13, Â¶ 19, 71 P.3d 1, 4.
Â¶23 As previously noted, Dunivan's conduct toward his former spouse did not involve physical abuse or the threat of violence. Rather, the underlying conduct that concerns us here is the persistent disregard of court orders. In the simplest of terms, it is about following the rules. See State ex rel. Okla. Bar Ass'n v. Strickland, 2011 OK 54, Â¶ 9, 256 P.3d 76, 79 (endorsing statement that "if there is anybody that should understand they have to play by the rules, it should be an attorney"). An attorney's failure to do so is certain "to undermine public confidence in and perception of the legal profession as a community of law-abiding practitioners." State ex rel. Okla. Bar Ass'n v. Livshee, 1994 OK 12, Â¶ 8, 870 P.2d 770, 774.
Â¶24 Dunivan has already received a private reprimand from the OBA's Professional Responsibility Commission, in 2010. On more than one occasion in 2016, Dunivan violated a protective order issued by an Oklahoma court of record. Then, while under a deferred sentence in 2018 for his protective-order violation, Dunivan twice broke that same court's plain conditions of deferment by drinking alcohol in his home. And, while under this Court's order of interim suspension, Dunivan nevertheless used his OBA membership number when signing a pro se filing in his ongoing divorce case with his current wife. Even when allowing for some degree of carelessness in the latter instance, all of this adds up to "a lawyer [who] appears to the public to be placing himself above the law." Id. (quotation omitted). Again, "[a] pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation"--as here. ORPC 8.4 cmt. 2.
Â¶25 In view of the foregoing, we decline Dunivan's invitation to issue a reprimand, but we also find too burdensome the PRT's recommendation of a probationary year before full reinstatement. The record before us--which includes detailed evaluations by a psychologist and a substance-abuse specialist--does not clearly and convincingly establish that Dunivan currently abuses alcohol. This record also does not permit us to declare with certainty that Dunivan's past alcohol use bore a definite and direct causal relationship to his professional misconduct. "While the steps recommended by the trial panel are laudable, we are not making them a condition of reinstatement." Albert, 2007 OK 31, Â¶ 18, 163 P.3d at 534.
Â¶26 We conclude that the appropriate discipline for Dunivan is suspension for a period of one year, to be imposed retroactively to December 18, 2017, the date on which his interim suspension began. We also order Dunivan to pay costs to the OBA in the amount of $2,105.77 within 90 days of the effective date of this opinion.
RESPONDENT SUSPENDED FOR ONE YEAR, RETROACTIVE TO
THE DATE OF INTERIM SUSPENSION; COSTS IMPOSED
Â¶27 Gurich, V.C.J., Kauger, Winchester, Edmondson, Colbert, Reif, JJ., concur;
Â¶28 Combs, C.J., Wyrick, Darby, JJ., concur in part and dissent in part;
Combs, C.J., with whom Wyrick and Darby, JJ., join concurring in part and dissenting in part;
"I would begin the one-year suspension from the date of the order." 
FOOTNOTES
[1] Under an Alford plea, "a defendant admits there is sufficient evidence to support a conviction." Martin v. Phillips, 2018 OK 56, Â¶ 1, 422 P.3d 143, 144; see generally North Carolina v. Alford, 400 U.S. 25 (1970). We construe a criminal defendant's Alford plea as a plea of guilty, albeit one "entered while maintaining innocence." Martin, 2018 OK 56, Â¶ 10, 422 P.3d at 147.
[2] The protective order, eventually extended to cover a period of five years, is set to expire on December 4, 2019.
[3] Even so, there is no suggestion that the OBA considered pursuing disciplinary action against Dunivan under Rule 10 of the RGDP, "which concerns suspension of a lawyer from the practice of law due to personal incapacity." State ex rel. Okla. Bar Ass'n v. Albert, 2007 OK 31, Â¶ 9, 163 P.3d 527, 532.
[4] At his June 5, 2018 PRT hearing, Dunivan would also admit to drinking some beers--"one or two"--about "[t]wo or three weeks" before the hearing. He acknowledged at the hearing that doing so plainly violated a condition of his deferred sentence.
[5] This is not to say that our nondeferential review should be considered "as diminishing the importance of the PRT trial panel and its recommendations." State ex rel. Okla. Bar Ass'n v. Demopolos, 2015 OK 50, Â¶ 26, 352 P.3d 1210, 1218. "A trial panel functions as this Court's hearing examiner and provides a procedural conduit for the record and legal arguments by making the matter ready for this Court's original de novo review of the case." Id.
[6] As a threshold matter, this "duty can be discharged only if the trial panel submits to us a complete record of the proceedings." State ex rel. Okla. Bar Ass'n v. Minter, 2001 OK 69, Â¶ 8, 37 P.3d 763, 769. "Our initial task is to ascertain whether the tendered record is sufficient to permit (a) an independent determination of the facts and (b) the crafting of an appropriate discipline." Id. The record presented in this case is sufficient for us to proceed with determining appropriate attorney discipline.
[7] As subsequently amended, RGDP Rule 7.3 now directs that we "may by order immediately suspend the lawyer from the practice of law until further order of the Court." (emphasis added).
[8] Dunivan did not request that we set aside the interim order of suspension during the pendency of these proceedings.
[9] "The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action . . . ."