2011 OK 75

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

**v.**

**Jon R. RUNNING, Respondent.**

**SCBD No. 5737.**

Supreme Court of Oklahoma.

Aug. 17, 2011.

Rehearing Denied Oct. 17, 2011.

Gina L. Hendryx, General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.

COMBS, J.

¶ 1 On March 17, 2011, Complainant, Oklahoma Bar Association (Complainant), filed a formal disciplinary complaint pursuant to Rule 6, Rules Governing Disciplinary Proceedings (RGDP), 5 O.S. 2001, Ch. 1, App. 1–A, which alleged Respondent, Jon R. Running (Respondent), continued to actively engage in the practice of law during a time period when he was administratively suspended from the practice of law for nonpayment of membership dues.[1] Complainant alleges Respondent's actions violated Rule 5.5(a) of the Oklahoma Rules of Professional Conduct (RPC), 5 O.S. Supp.2008, Ch. 1, App. 3–A, and Rule 1.3 of the RGDP, 5 O.S.2001, Ch.1, App. 1–A.[2] The Trial Panel of the Professional Responsibility Tribunal (Trial Panel), also found that Respondent violated Rule 9.1 of the RGDP, 5 O.S.2001, Ch. 1, App. 1–A.[3] At the May 4, 2011, hearing, Complainant recommended Respondent be suspended for eleven months which would amount to the time he practiced law under suspension (June 29, 2009–May 17, 2010). The Trial Panel found that insufficient and unanimously recommended suspension for a period of eighteen months. In its Brief in Chief, Complainant agrees that the eighteen-month suspension is warranted. Complainant also filed an Application to Assess Costs pursuant to Rules 6.13 and 6.16, RGDP, 5 O.S.2001, Ch. 1, App. 1–A.

## BACKGROUND

¶ 2 Each active member of the Oklahoma Bar Association (Bar) shall pay his or her bar dues annually on or before the 2nd of January.[4] Failure to pay annual dues will ultimately result in suspension.[5] A suspended member shall not practice law in this state until reinstated.[6] Respondent was suspended for failure to pay his bar dues on June 29, 2009, through May 17, 2010, at which time he was reinstated. Respondent had previously been suspended for failure to pay his dues in 2005 and 2007.

¶ 3 One of Respondent's clients, John Sipes (Sipes) filed a grievance with the Bar on April 26, 2010.[7] Sipes alleged Respondent did not represent him correctly in legal matters due to his suspension from the practice of law. An investigation was initiated by the Bar in a second formal grievance made by the Office of the General Counsel.[8] This

1. June 29, 2009, was the date of his suspension.

2. Rule 5.5, RGDP, "(a) A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so . . ."
   Rule 1.3, RGDP, "[t]he commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline . . ."

3. Rule 9.1, RGDP, "When the action of the Supreme Court becomes final, a lawyer who is disbarred or suspended, or who has resigned membership pending disciplinary proceedings, must notify all of the lawyer's clients having legal business then pending within twenty (20) days, by certified mail, of the lawyer's inability to represent them and the necessity for promptly retaining new counsel. If such lawyer is a member of, or associated with, a law firm or professional corporation, such notice shall be given to all clients of the firm or professional corporation, which have legal business then pending with respect to which the disbarred, suspended or resigned lawyer had substantial responsibility. The lawyer shall also file a formal withdrawal as counsel in all cases pending in any tribunal. The lawyer must file, within twenty (20) days, an affidavit with the Commission and with the Clerk of the Supreme Court stating that the lawyer has complied with the provisions of this Rule, together with a list of the clients so notified and a list of all other State and Federal courts and administrative agencies before which the lawyer is admitted to practice. Proof of substantial compliance by the lawyer with this Rule 9.1 shall be a condition precedent to any petition for reinstatement."

4. 5 O.S.2001, Ch. 1, App. 1, Art. 8, § 1.

5. 5 O.S.2001, Ch. 1, App. 1, Art. 8, § 2.

6. *Id.*

7. DC 10–126.

8. December 10, 2010; DC 10–263.

formal grievance was made to determine if Respondent was practicing law while suspended. In his response to the second grievance, Respondent admitted he performed legal work during his suspension but that it was limited in nature.

¶ 4 The evidence at the May 4, 2011, hearing, showed that Respondent represented Sipes in two cases during the suspension period and another client, On Site Welding LLC, during the same period. Respondent entered an appearance on February 12, 2009, representing Sipes in a foreclosure case brought by Arvest Bank. This case was filed in the District Court of Tulsa County. Respondent admitted he was in Tulsa at the end of July to help finalize the Arvest case. He admitted he attended and negotiated the settlement of that case during his suspension. Respondent neither withdrew as an attorney from the case, nor notified his client or opposing counsel that he was suspended from practicing law. Respondent claims that he did approximately six hours of work on the Arvest case after he was suspended.

¶ 5 Respondent also admitted that he provided legal advice to Sipes in a second lawsuit (Whatley litigation) during his suspension. This was a case filed in the District Court of Okmulgee County. Although Respondent did not enter an appearance in the case, he admitted representing Sipes from August 3, 2009, through November 13, 2009, to resolve the Whatley litigation. Respondent's facsimiles to Sipes dated November 20, 2009, and December 2, 2009, explain his involvement in the Whatley litigation. He notes that a deposition was scheduled for September 9, 2009, and he had agreed to continue with the deposition if he was paid in full. He notes that he made calls to Sipes during the time he was suspended to prepare

for the deposition, and when Sipes did not pay, he notified Ken Smith, attorney for Whatley, on September 8, 2009, to cancel the deposition. He also billed Sipes for a total of fourteen hours during this period.[9] At the May 4, 2011, hearing, Respondent admitted that in his June 29, 2010, grievance response, he redacted this billing information.[10]

¶ 6 On May 1, 2009, Respondent entered an appearance in another case representing On Site Welding, LLC. Respondent did not withdraw from the case during the suspension period, and did not notify his client that he had been suspended. He also admitted at the hearing that he had made calls to opposing counsel concerning the case during his suspension.

### STANDARD OF REVIEW

¶ 7 "In a bar disciplinary proceeding the court functions as an adjudicative licensing authority that exercises exclusive original cognizance."[11] This Court conducts a nondeferential *de novo review* of all relevant facts and the recommendations of the trial panel are not binding.[12]

### DISCUSSION

¶ 8 The notice of suspension dated June 29, 2009, informed Respondent he must notify his clients of his suspension by certified mail, he must file a formal withdrawal from all cases, and must file an affidavit with the Professional Responsibility Commission and the Clerk of the Supreme Court stating he has complied with Rule 9.1. Respondent admits at the hearing that he was sure he had received notice of his suspension. However, he stated the first time he focused on his suspension was when Sipes sent him a

9. In Exhibit 17, facsimile from Respondent to Sipes dated December 3, 2009, it indicates 8.75 hours were billed to Sipes concerning the Whatley litigation. In his Response to Complainant's Brief–In–Chief, however, he says, on page 2, that "I performed a total of 14 hours of legal work in connection with all other matters for Mr. Sipes (Whatley Litigation)."

10. The billing information was in a facsimile dated November 20, 2009, from Respondent to Sipes (Exhibit 17). This facsimile was provided to the Bar by Sipes' attorney Taubman. Respon-

dent included this November 20, 2009, facsimile, sans the billing information, to the Bar with his June 29, 2010, response to the first grievance. The billing information would have confirmed Respondent was doing legal work for Sipes during the period of suspension.

11. *State ex rel. Oklahoma Bar Association v. Giger,* 2001 OK 96, ¶ 5, 37 P.3d 856, 860.

12. *Id.*

text. He testified this occurred in February 2010 but was unsure.[13] He also testified he did not notify his clients or withdraw from pending cases. The Bar investigator also testified that no Rule 9.1 affidavit had been filed.

¶ 9 In his Response to Complainant's Brief–In–Chief, Respondent states he neither denies that his services constituted the unauthorized practice of law nor denies he should be held accountable for his actions. Respondent's defense is basically that he did not "maintain" a "systematic and continuous" presence in Oklahoma during the suspension period, and his limited legal work did not amount to "actively" engaging in the practice of law in Oklahoma as asserted by the Bar. In his response he states that less than one week of legal work during a forty-six-week period is not being "actively" engaged in the practice of law. This assertion was made after the May 4, 2011, hearing where he conceded that even "one hour" of legal work amounts to the practice of law.[14]

¶ 10 Respondent asserts that his legal work during his suspension was limited to longtime clients, assisting persons recommended to him from people he knew for a long time, and work for attorneys he knew in connection to a particular case. He was living in Dallas, Texas, and did not maintain an office in Oklahoma. However, he testified that he "always" used a Tulsa/Bixby address on his pleadings which he says was merely a mail drop. He states that a mail drop is not an office. Testimony showed, during his suspension, Respondent occasionally met with Sipes in Oklahoma and that signing of paperwork in the Arvest case was done in Oklahoma at Sipes' office.

¶ 11 Respondent also asserts that he discontinued representing Sipes in November 2009, and Sipes should have obtained another attorney. Respondent sent a facsimile to Sipes dated November 20, 2009. In this facsimile he states he will not represent Sipes unless he contacts Respondent that day to make payment arrangements. Default judgment was entered in the Whatley litigation against Sipes in February 2010 because Sipes failed to respond to a Motion for Default Judgment. Sipes obtained new counsel (Michael Taubman) in March 2010. Taubman filed a Motion to Vacate Default Judgment on March 11, 2010. On or about March 4, 2010, Taubman discovered that Respondent had been suspended from the practice of law and informed Sipes. An Affidavit of John Sipes was attached to the motion to vacate. In the affidavit, Sipes stated he believed Respondent had a license to practice law in Oklahoma and believed Respondent was protecting his and his wife's interests in the Whatley litigation. In his Response, Respondent states that he did not represent Mrs. Sipes, he discontinued representation of Mr. Sipes in November 2009, and any detriment that may have occurred to Sipes was his own fault for waiting so long to hire another attorney.

¶ 12 The Respondent's arguments are unfounded. The practice of law is neither determined by the number of hours worked on a matter, nor is it diminished by the relationship an attorney has with his client. There is no merit to his argument that his work should not be considered an "active" practice of law. This Court has found that the "practice of law" is the "rendition of services requiring the knowledge and the application of legal principles and technique to serve the interests of another with his consent."[15]

¶ 13 Here, the Respondent negotiated a settlement, tried to arrange a deposition, gave legal advice, billed Sipes for legal advice, had contacts with opposing counsel, and received pleadings in cases where he was still an attorney of record. All of these actions occurred during Respondent's suspension and fall within our definition of "the practice of law." These unauthorized acts concerned cases filed in Oklahoma. Filings in these cases also show an Oklahoma address for him. Regardless, if Respondent maintained a continuous and systematic practice of law in Oklahoma, his actions were the practice of

13. Testimony from Michael Taubman states that he discovered the suspension in March 2009. Sipes testified at the hearing he discovered Respondent's suspension from Taubman.

14. Transcript of the Proceedings on May 4, 2011, page 125.

15. *R.J. Edwards, Inc. v. Hert*, 1972 OK 151, ¶ 20, 504 P.2d 407, 416.

law in Oklahoma. Such actions violated Rule 5.5(a), RGDP, for practicing law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction.

¶ 14 Sipes asserts that he was detrimentally affected in the Whatley litigation because he believed Respondent was licensed to represent him. Respondent was already suspended when he performed legal work for Sipes on the Whatley litigation. His communications with Sipes indicating he would continue representing him if Sipes would arrange to pay Respondent were disingenuous.[16] Respondent was suspended and could not even file an entry of appearance in his case. The confusion about whether or not Sipes should or should not have known he was represented by Respondent is the exact situation the rules of this Court are trying to avoid. Had Respondent not been suspended he would have been able to file an entry of appearance in the Whatley litigation, and he also could have later filed a motion to withdraw. These are all understandable documents that would clearly notify a client whether or not he or she was represented. Respondent, of course, could not do this because he was suspended. It cannot be said that his failure to notify Sipes of his suspension did not detrimentally affect Sipes. Sipes was under the impression that all necessary legal work could be handled by Respondent, and that was a falsity perpetuated by the Respondent.

▬ ¶ 15 Respondent last asserts that the disciplinary sanction recommended by the Trial Panel is excessive. The Trial Panel recommends that Respondent be suspended from the practice of law for eighteen months. Respondent relies on previous cases to assert he should have leniency.[17] He requests a private reprimand and probation. From our *de novo review* we find that neither recommendation is appropriate. The disciplinary process, including the imposition of a disciplinary sanction, is designed, not to punish the delinquent lawyer, but to safeguard the interest of the public, the judiciary, and the legal profession.[18] Respondent has shown a repeated disregard of this Court's rules governing lawyers. He has been suspended three times for failure to pay bar dues. In the present case, he continued to practice law after suspension without notifying his clients or withdrawing from pending litigation, all in violation of Rules 1.3 and 9.1 RGDP, and Rule 5.5(a) RPC. He falsely represented to Sipes that he was able to perform legal work when Respondent knew, or should have known, he was suspended. He redacted information from documents he sent to the Bar which would have helped in its investigation of Respondent. Further, his characterization of what constitutes the practice of law shows a fundamental disconnect with the legal profession. Disciplinary sanctions operate to not only deter the offending lawyer but also to put others on notice that violations of the rules of this Court will not be tolerated. Practicing law while suspended detrimentally affects a lawyer's ability to represent a client. In the interest of safeguarding the public we find that an eighteen-month suspension is too lenient. We hold that the Respondent should be suspended from the practice of law for a period of two years and a day from the date this opinion becomes final.

¶ 16 The Complainant has filed an Application to Assess Costs in the amount of $1,382.32. The Respondent is ordered to pay this amount within ninety (90) days of the date this opinion becomes final.

**RESPONDENT IS SUSPENDED FROM THE PRACTICE OF LAW FOR TWO YEARS AND A DAY FROM THE DATE THIS OPINION BECOMES FINAL; AND ORDERED TO PAY COSTS**

¶ 17 CONCUR: TAYLOR, C.J., COLBERT, V.C.J., WINCHESTER, EDMONDSON, REIF, AND COMBS, JJ.

¶ 18 CONCUR IN PART; DISSENT IN PART: KAUGER, WATT and GURICH, JJ.

---

16. In a November 20, 2009, facsimile from Respondent to Sipes (included in Exhibits 5 and 17), he reiterated he notified Sipes on November 11, 2009, that he would not have any further involvement until Sipes paid his obligations.

17. *State ex rel. Oklahoma Bar Association v. Malloy,* 2006 OK 38, 142 P.3d 383; *State ex rel. Oklahoma Bar Association v. Wagener,* 2005 OK 3, 107 P.3d 567.

18. *State ex rel. Oklahoma Bar Association v. Giger,* 2003 OK 61, ¶ 33, 72 P.3d 27, 38.

WATT, J., with whom KAUGER AND GURICH, JJ. join, concurring in part and dissenting in part. I would follow the Professional Responsibility Tribunal's recommendation for an 18 month suspension.