STATE ex rel. OKLAHOMA BAR ASSOCIATION v. MOISANT



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:STATE ex rel. OKLAHOMA BAR ASSOCIATION v. MOISANT

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 STATE ex rel. OKLAHOMA BAR ASSOCIATION v. MOISANT
2019 OK 55
Case Number: SCBD-6627
Decided: 09/10/2019
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2019 OK 55, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

STATE OF OKLAHOMA ex rel., OKLAHOMA BAR ASSOCIATION, Complainant,
v.
JAY PATRICK MOISANT, Respondent.

ORIGINAL PROCEEDING FOR ATTORNEY DISCIPLINE

¶0 Respondent, an attorney licensed in Oklahoma, was suspended from the practice of law by a previous order of this Court for failure to comply with Mandatory Continuing Legal Education. He practiced law after the order of suspension and did not appropriately notify his clients or withdraw from pending cases. The Oklahoma Bar Association filed a formal complaint against the Respondent. A hearing was held before a Trial Panel of the Professional Responsibility Tribunal and the Trial Panel recommended a one year retroactive suspension of Respondent's license from the date he last engaged in the unauthorized practice of law. We hold the Respondent should be suspended from the practice of law for six months from the date of this opinion and assess costs against him as provided herein.

RESPONDENT'S LICENSE TO PRACTICE LAW SUSPENDED FOR SIX MONTHS; 
THE APPLICATION FOR COSTS GRANTED.

Loraine Dillinder Farabow, First Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.

Brett D. Sanger, Oklahoma City, Oklahoma for Respondent.[1]

COMBS, J.:

¶1 The Complainant, State of Oklahoma ex rel. Oklahoma Bar Association (Complainant), began proceedings pursuant to Rule 6, Rules Governing Disciplinary Proceedings (RGDP) 5 O.S. 2011, ch. 1, app. 1-A (amended 1/9/2017, 2017 OK 1), alleging four counts of misconduct against the Respondent, Jay Patrick Moisant (Respondent). The professional misconduct arises from actions taken by the Respondent following his suspension from the practice of law and some related to actions taken prior to his suspension. The Complainant alleges the Respondent's actions are in violation of the Oklahoma Rules of Professional Conduct (ORPC), 5 O.S. 2011, ch. 1, app. 3-A, and the RGDP and are cause for professional discipline. This matter was assigned to this office on July 2, 2019.

I. Facts

¶2 The Respondent was admitted to the Oklahoma Bar on April 25, 2003.[2] Following law school he worked for several different law firms. His responsibilities at those firms did not include collecting client funds or billing, other than keeping an account of his own billable hours.[3] Somewhere between 2014 and 2015 he was employed with the state as in-house counsel to the Commissioners of the Land Office (CLO).[4] Shortly thereafter, an attorney friend of his, Isaac Warren, opened a new practice and asked the Respondent to join him.[5] The Respondent left the CLO and joined Mr. Warren's practice in the spring of 2015.[6] However, within a few months of joining, Mr. Warren suddenly disclosed he was moving to Texas and left the practice to the Respondent but the record reflects there were few if any paying clients/cases transferred to the Respondent.[7] The Respondent testified that this is when his problems began.[8] He stated, "I didn't really have a feel for what's involved in running your own practice, the marketing, the funds management, the administrative. . . . I was just really floundering."[9] By 2016 his finances were suffering and other problems arose.[10] His wife developed an ongoing serious illness causing the Respondent to take on more responsibilities with their five children, some of which have special needs that require substantial attention.[11] This caused the Respondent to devote less time to gaining business, servicing clients, and collecting from clients.[12] He testified, it prevented him from keeping up with his Mandatory Continuing Legal Education (MCLE) requirements; he could not afford it and "keep the lights on or put gas in the car."[13]

¶3 On March 15, 2017, a letter from the Oklahoma Bar Association (OBA) was sent to the Respondent informing him of the May 15, 2017, deadline to show cause why his license should not be suspended for failure to comply with MCLE requirements for the year 2016.[14] The Respondent did not respond and on May 30, 2017, this Court issued an Order suspending the Respondent from the practice of law for failure to comply with Rules 3 and 5 of the rules for MCLE, 5 O.S. 2011, ch.1, app. 1-B.[15] On the same day, the OBA sent a letter to the Respondent with the attached Order.[16] The letter informed the Respondent that he may seek reinstatement pursuant to MCLE Rules 6(b) and 6(d). The letter also informed him that if he did not reinstate from this suspension he was required, pursuant to Rule 9.1, RGDP, to do the following within twenty (20) days of the May 30, 2017, Order:

1. Notify all your clients having legal business pending by certified mail of your inability to represent them and the necessity for promptly retaining new counsel.

2. File a formal withdrawal as counsel of record in all cases pending in any tribunal.

3. File an affidavit with the Professional Responsibility Commission and with the Clerk of the Supreme Court stating that you have complied with Rule 9.1.

The letter also warned him of the consequences for failure to take these actions. The Respondent testified he received this letter on June 3, 2017.[17]

¶4 The Respondent did not seek reinstatement as provided in the letter and on June 11, 2018, his name was stricken from the roll of attorneys for this failure to comply with MCLE requirements.[18] The Respondent has ceased to be a member of the OBA since that time. In addition, on June 4, 2018, he was suspended for failure to pay his dues for the year 2018.[19] However, on August 20, 2018, the Respondent paid a late penalty, plus the reinstatement fee and his dues for 2018.[20] Prior to his suspension for failure to comply with MCLE requirements, the Respondent had never had a Bar complaint filed against him.[21]

II. Standard of Review

¶5 In Bar disciplinary proceedings, this Court possesses exclusive original jurisdiction. State ex rel. Oklahoma Bar Ass'n v. Holden, 1995 OK 25, ¶ 10, 895 P.2d 707. Our review of the evidence is de novo in determining if the Bar proved its allegations of misconduct by clear and convincing evidence. Rule 6.12(c), RGDP; State ex rel. Oklahoma Bar Ass'n v. Bolusky, 2001 OK 26, ¶ 7, 23 P.3d 268. Our goals in disciplinary proceedings are to protect the interests of the public and to preserve the integrity of the courts and the legal profession, not to punish the offending lawyers. State ex rel. Oklahoma Bar Ass'n v. Kinsey, 2009 OK 31, ¶15, 212 P.3d 1186. Whether to impose discipline is a decision that rests solely with this Court and the recommendations of the Professional Responsibility Tribunal (PRT) are neither binding nor persuasive. State ex rel. Oklahoma Bar Ass'n v. Eakin, 1995 OK 106, ¶ 8, 914 P.2d 644.

¶6 Rule 1.1, RGDP, was amended in 2017 to clarify this Court's continuing jurisdiction "to impose discipline for cause on a lawyer whose name has been stricken from the Roll of Attorneys for non-payment of dues or for failure to complete mandatory continuing legal education." Amendment to Rules Governing Disciplinary Proceedings, 2017 OK 1.

III. Analysis

A. The Alleged Misconduct

¶7 After initiating this matter on January 22, 2018, the Complainant amended its Complaint on September 28, 2018. This Amended Complaint contains four Counts. The Complainant's Brief re-alleges those Counts. The Respondent was suspended from the practice of law effective May 30, 2017, and claims to have become aware of his suspension on June 3, 2017.[22] The Respondent had twenty days from the date of the May 30, 2017 Order to withdraw from his pending cases, notify his clients by certified mail of his suspension and file an affidavit with the Professional Responsibility Commission and the Clerk of the Supreme Court attesting to his compliance with Rule 9.1, RGDP. In none of the sixteen cases mentioned in the Amended Complaint did the Respondent timely move to withdraw as counsel.[23] He testified to this fact at the hearing before the Trial Panel of the PRT (Trial Panel).[24] In half of these cases no motion to withdraw was ever filed but many of them have since concluded without a timely appeal.[25] The status of two of these cases, however, appears to be either inconclusive or pending.[26]

¶8 The Respondent's Exhibit "A", attached to his untimely filed October 17, 2018 Rule 9.1, RGDP affidavit, attests to informing his clients of his suspension in nine of the sixteen cases on June 3, 2017[27] and the clients in two other cases on June 15, 2017.[28] A third client, not mentioned in the affidavit, was informed on June 16, 2017 according to the Respondents testimony.[29] This was all within the twenty-day period required under Rule 9.1, RGDP. In two other cases he attests to informing his clients on December 5, 2017, well outside of the twenty-day period.[30] However, the Respondent testified he did not inform any of his clients by certified mail as required under Rule 9.1, RGDP.[31] Of the two remaining cases not addressed in Exhibit "A", one concerned the same client he attested to informing on June 3, 2017,[32] but it is unclear when he informed his client in Sunstate Equipment Co., LLC v. Red River Landscaping & Construction, LLC, Oklahoma County Dist. Ct. Case No. CJ-2016-5182.

¶9 The Respondent also engaged in the unauthorized practice of law following his suspension. In Sunstate Equipment Co., LLC v. Red River Landscaping & Construction, LLC, Oklahoma County Dist. Ct. Case No. CJ-2016-5182, the Respondent continued representation of his client after he received notice of his suspension (June 3, 2017). On or about July 5, 2017, the Respondent mailed to opposing counsel his client's responses to the plaintiff's interrogatories and request for production of documents.[33] The Respondent continued to correspond with opposing counsel concerning the case between June 16, 2017 and August 31, 2017.[34] On September 5, 2017, (one day before trial) opposing counsel learned of the Respondent's suspension and notified the judge assigned to the case, Judge Ogden. That same day, Judge Ogden conducted a telephone conference with the Respondent on the record.[35] Judge Ogden asked the Respondent whether he was aware that he had been suspended and the Respondent replied "[y]es, I'm aware. And I've been reinstated. It was a matter of some paperwork not getting up to speed, but yes."[36] Judge Ogden then informed the Respondent that he had just spoken with the MCLE director and she stated the Respondent had not complied with the MCLE hourly requirements nor paid any of the fees or fines.[37] He then reminded the Respondent of his duty to show candor to the court and asked him once again whether or not he had a reinstatement letter or order of the Supreme Court reinstating him.[38] The Respondent replied he had not been reinstated.[39] At the November 13, 2018 hearing before the Trial Panel the Respondent admitted he had not been candid with the court and deeply regretted making this misrepresentation.[40] The day after the telephone conference, September 6, 2017, the opposing counsel filed a grievance with the Office of the General Counsel concerning this matter (Sunstate grievance).[41]

¶10 The Respondent also engaged in the unauthorized practice of law in Dodd v. Sullivan, et al., Oklahoma County Dist. Ct. Case No. CJ-2017-498. On May 16, 2017 and prior to his suspension, a journal entry of judgment was filed in this case. The Respondent signed this journal entry as the attorney representing the plaintiffs. However, due to an error in publishing notice the plaintiffs filed a motion to vacate on October 10, 2017. The Respondent's name does not appear on the motion. The trial court on December 19, 2017 entered a second journal entry of judgment which the Respondent signed as the attorney representing the plaintiffs. This occurred almost seven months after his suspension and several months after he had already been notified of the Sunstate grievance. The Respondent testified that he should not have signed the journal entry but he was trying to bring closure to the case and did not want to burden his clients with obtaining a new attorney.[42] The case concerned a quiet title action that appeared uncontested and the delay was already "tying up" his client's loan.[43]

¶11 In Advanced Restoration & Contracting, LLC, v. Clanton et al., Oklahoma County Dist. Ct. Case No. CJ-2016-4597, the plaintiff, Advanced Restoration & Contracting (ARC) sued the Clantons for breach of contract. Ian Rupert, principal of Ian's Enterprise, LLC had been working with the Clantons. Mr. Rupert worked in the same building as the Respondent and has extensive credentials as a public adjustor and experience in insurance claims analysis and consulting.[44] He is not an attorney but had collaborated with the Respondent on other cases providing clerical assistance under the Respondent's supervision. The Clantons hired the Respondent to represent them in the ARC litigation based upon Mr. Rupert's recommendation. They entered into a "Legal Engagement Agreement" with both the Respondent and Mr. Rupert on June 9, 2016.[45] This contract refers to Mr. Rupert as "Processor" and the Respondent as "Attorney." It requires the Clantons to compensate the Respondent by paying two hundred dollars ($200.00) per hour to the Processor with the Processor receiving twenty-five percent (25.0%). The contract provides the Processor's compensation is for duties related to administrative support and not for legal services. The Respondent testified that Mr. Rupert performed paralegal work for him.[46] The Clantons paid a one thousand dollar ($1,000.00) retainer on or about June 2, 2016.[47] The Respondent admits he failed to properly manage this money.[48] The Complainant alleges the Respondent did not operate a trust account and thus failed to comply with Rule 1.15, ORPC. The Respondent does not contest these allegations and admitted he did not know he was required to have a trust account.[49] The Clantons were notified of the Respondent's suspension on December 5, 2017, over six months after he was suspended.[50] Afterward, they hired another attorney, Peter Scimeca, to represent them. Mr. Scimeca entered an appearance in the case on January 19, 2018. On March 7, 2018, Mr. Scimeca filed a grievance with the Office of the General Counsel alleging the Respondent aided a non-lawyer in the unauthorized practice of law, failed to properly supervise a non-lawyer, and allowed a non-lawyer to manage client trust funds.[51]

B. The Rule Violations 

¶12 The Trial Panel filed its report on January 14, 2019. The report found the Complainant had proven by clear and convincing evidence various rule violations. It determined the Respondent failed to timely notify his clients and withdraw from representation within twenty days of his suspension in violation of Rule 9.1, (Notice to Clients), RGDP and this was not disputed. By failing to properly inform his clients of his suspension and timely withdrawing from their cases, the Respondent was also found to have violated the following Rules of the ORPC: 1.1 (Competence), 1.3 (Diligence), 1.4 (Communication), and 1.16 (Declining or Terminating Representation).

¶13 The report also found clear and convincing evidence the Respondent was not truthful with Judge Ogden regarding the status of his suspension and lacked candor with the court. These actions resulted in violations of both Rule 3.3 (Candor Toward the Tribunal) and Rule 8.4 (a) and (c) (Violating Rules of Professional Conduct/Engaging in Conduct Involving Dishonesty, Fraud, Deceit or Misrepresentation), ORPC. The Respondent was also found to have violated Rule 5.5 (Unauthorized Practice of Law), ORPC for his actions following his May 30, 2017 suspension.

¶14 Additionally, the report noted the Trial Panel was not concerned about whether Mr. Rupert was practicing law without a license but did find there was no dispute he improperly received and managed the initial retainer paid by the Clantons. The report found the Respondent therefore mismanaged client funds. Although, the report does not mention which rule this violates, the Amended Complaint cites to Rule 1.15 (Safekeeping Property), ORPC. Paragraph (c) of this rule provides: "(c) A lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred."

¶15 The Complainant's Brief addresses another rule violation not specifically mentioned in the Trial Panel's Report. The Complainant asserts the Respondent's conduct discredited the legal profession in violation of Rule 1.3 (Discipline For Acts Contrary To Prescribed Standards Of Conduct), RGDP. This rule provides:

The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline.

The Brief also states the Respondent does not dispute that his violations of his professional duties warrant the imposition of discipline, citing statements made by the Respondent's attorney, Mr. Sanger at the November 13, 2018 hearing, wherein he agreed that a one-year suspension from the last date of the Respondent's unauthorized practice of law[52] was warranted.[53]

¶16 At the November 13, 2018, hearing before the Trial Panel, Mr. Sanger admitted the facts of this case were not in dispute and agreed that the focus of their presentation would be to provide mitigating factors.[54] In fact, the only allegation that appears to have been contested was whether Mr. Rupert had engaged in the unauthorized practice of law.[55] The later filed report, however, was not concerned with this issue but was mainly concerned with the uncontested facts related to how the clients' payments were managed, i.e., the payments were received by Mr. Rupert rather than the Respondent who should have then deposited them into a trust account.

¶17 We agree with the Trial Panel and the Complainant and find the Complainant has proven by clear and convincing evidence the Respondent violated Rules 1.1, 1.3, 1.4, 1.15, 1.16, 3.3, 5.5, and 8.4 ORPC, and Rules 1.3 and 9.1, RGDP. As to the Rule 9.1, RGDP violations, the evidence supports the Respondent did not timely withdraw from any of the subject cases, he did, however, notify some of his clients within the twenty-day period but he did not notify any of them by certified mail during this period as required by rule.[56]

C. Discipline

¶18 Discipline is administered by this Court to deter an attorney from similar future conduct and to act as a restraining vehicle on others who might consider committing similar acts. State ex rel. Oklahoma Bar Ass'n v. Townsend, 2012 OK 44, ¶31, 277 P.3d 1269. Discipline is fashioned to coincide with the discipline imposed upon other attorneys for like acts of professional misconduct. Id.

¶19 The Trial Panel reviewed a range of discipline imposed by this Court in cases concerning an attorney's unauthorized practice of law. Both the Trial Panel and the Complainant found State ex rel. Oklahoma Bar Ass'n v. Malloy, to be the most relevant.[57] 2006 OK 38, 142 P.3d 383. In Malloy an attorney completed his MCLE for the year 2002 but failed to file his report of compliance. Malloy, 2006 OK 38, ¶3. The OBA sent Malloy an order to show cause by certified mail but he denied he received the order. Id. An order of suspension was issued on July 3, 2003, suspending Malloy from the practice of law. Id., ¶4. Malloy admitted to receiving this order but continued to practice law for several months afterward. Id., ¶5. An opposing counsel made a complaint to the OBA in February 2004. Id. Shortly thereafter, Malloy sought reinstatement which was granted on March 15, 2004. Id. The OBA then instituted proceedings against Malloy for his unauthorized practice of law during his suspension. Id. We noted at no time prior to the complaint being filed had Malloy attempted to set aside or vacate his order of suspension. Id. Malloy argued that because he never received the notice to show cause his due process rights were violated and this Court lacked personal jurisdiction to issue the July order. Id.,¶7. We determined we might entertain his argument if this was an ordinary civil case, but an attorney disciplinary proceeding is not an ordinary civil case. Id., ¶8. As an officer of the court an attorney is held to a higher ethical standard than those of a layperson and has an affirmative duty to obey any order of this Court. Id. Malloy was not allowed to hide behind an order he believed was invalid without bringing his refusal to obey the order to this Court's attention. Id. An attorney's willful disregard of a suspension order is a serious matter that undermines the authority of the judicial system and erodes the public trust in our profession. Id., ¶10. Respect for judicial rulings is essential to the proper administration of justice and this Court will not tolerate disobedience of its orders. Id. In suspending Malloy's license for nine months prospectively from the date of the opinion, we noted he had previously been disciplined four times, three of which ended in private reprimands and one ended in a public censure. Id., ¶¶11, 14.

¶20 In State ex rel. Oklahoma Bar Ass'n v. Patterson, an attorney was suspended by the United States Court of Appeals for the Tenth Circuit in 1994. 2001 OK 51, 28 P.3d 551. He continued to practice in federal court thereafter and was disbarred by the Tenth Circuit in 1998. Patterson, 2001 OK 51, ¶¶9-12. Patterson was required to notify the OBA of this discipline pursuant to Rule 7.7 (a), RGDP, but failed to do so on both occasions (1994 and 1998). Id., ¶13. This resulted in the OBA initiating a reciprocal disciplinary proceeding. Id., ¶2. The Trial Panel recommended Patterson receive public censure. Id., ¶30. In our review, we determined Patterson's failure to notify the OBA was not deliberate but occurred as the result of his ignorance. Id. Patterson lacked any ethical violations both before and after the commencement of the Bar proceedings, he cooperated with the Bar, and he had obvious remorse for his conduct. Id., ¶32. We held public censure was the appropriate discipline. Id.

¶21 In State ex rel. Oklahoma Bar Ass'n v. Running, an attorney was suspended for failure to pay his bar dues on June 29, 2009, and was later reinstated on May 17, 2010. 2011 OK 75, ¶2, 262 P.3d 736. On April 26, 2010, one of Running's clients filed a grievance with the Bar alleging Running did not represent him correctly in legal matters due to his suspension. Id., ¶3. The Bar initiated an investigation to determine whether Running was practicing law while suspended. Evidence at the PRT hearing showed Running represented clients in several cases during his suspension. Running did not withdraw from these cases nor notify his clients of his suspension as required by Rule 9.1, RGDP. Id., ¶¶4, 6. Running's main defense was that he did not maintain a systematic and continuous presence in Oklahoma during the suspension period, and his limited legal work did not amount to actively engaging in the practice of law. Id., ¶9. The evidence showed that during the suspension period Running negotiated a settlement, tried to arrange a deposition, gave legal advice, billed a client for legal advice, had contacts with opposing counsel, and received pleadings in cases where he was still the attorney of record. Id., ¶13. Finding no merit to his defense, we held, the practice of law is neither determined by the number of hours worked on a matter, nor is it diminished by the relationship an attorney has with a client. Id., ¶12. The practice of law is the rendition of services requiring the knowledge and the application of legal principles and technique to serve the interests of another with their consent. Id. In addition, a default judgment was entered against one of Running's clients in February 2010. Even though Running claimed he had discontinued representation of that client in November 2009 we held it "cannot be said that his failure to notify [his client] of his suspension did not detrimentally affect [his client]. Id., ¶14. The practice of law while suspended detrimentally affects a lawyer's ability to represent a client. Id., ¶15. In determining the appropriate discipline we noted Running had been suspended three times for failure to pay his dues and thereby had shown a repeated disregard of this Court's rules governing lawyers. Id. We held the eighteen-month suspension recommended by the PRT was too lenient. Id. In the interest of safeguarding the public we imposed a suspension for a period of two years and a day from the date of the opinion.

D. Mitigation and Recommendations

¶22 The Trial Panel found the Respondent's acts of misconduct were similar to those of the attorney in Malloy who was suspended for nine months. However, it noted this case was also different in that the Respondent had also mismanaged client funds and made dishonest statements to Judge Ogden. The Trial Panel focused heavily on mitigating circumstances in coming to its recommendation for discipline.

¶23 The Respondent was suddenly thrust into private practice when his managing partner left the firm soon after the Respondent joined. He had no prior experience at managing a law office. Around the same time, the Respondent's wife contracted a debilitating illness which greatly hampered the Respondent's ability to manage the law office, take care of his wife and their five (5) children, three of which have special needs. His billable hours went dramatically down as did his income. He was unable to pay for MCLE and was unaware he could apply for financial assistance for MCLE through the Bar. Respondent testified he battled depression which hindered his ability to resolve his ethical responsibilities. The Trial Panel found it clear the Respondent had no specific intent to avoid his ethical obligation for personal gain or had disregard for the well-being of his clients. His intent appeared to be a desire to help his clients finish their litigation before he withdrew so they would not have the expense and delay of retaining new counsel.

¶24 Apart from his suspension and the grievances filed in this matter, the Respondent had no prior disciplinary issues. He was found to be very cooperative and forthcoming with the Bar investigators and showed remorse for his actions. He has participated in the Lawyers Helping Lawyers program and has received counseling, which has helped with his depression and anxiety. The Respondent is currently working for and being mentored by Mr. Sanger, his attorney representing him in this matter.

¶25 Considering all the mitigating factors, both the Trial Panel and the Complainant agreed the appropriate discipline would be to suspend the Respondent from the practice of law for a period of one year from the date he last engaged in the unauthorized practice of law, which occurred on December 19, 2017. We cannot agree with this recommendation. Although the Trial Panel found the Respondent was not motivated by self interest in continuing to represent his clients after his suspension, that is only part of the story. It cannot be said that his clients were not harmed by his actions. For example, in the Sunstate case, the court discovered the Respondent's suspension one day before trial commenced thus delaying the trial. A month later the court issued an order directing the Respondent's client to find new counsel within thirty-three (33) days, this was not done and a default judgment was entered against the Respondent's client. In Running we held the practice of law while suspended detrimentally affects a lawyer's ability to represent a client. Similar to the Sunstate case, a default judgment was granted against Running's client months after Running claimed he had discontinued representing that client. Even though he was no longer representing the client at the time of the default judgment, we held his failure to notify his client of his suspension detrimentally affected the client.[58] Although the record is unclear when the Respondent notified his client in the Sunstate case, it cannot be said no harm was done. The recommendation to retroactively apply a one-year suspension which has already expired does not provide adequate deterrence. We are mindful of the Respondent's mitigating circumstances and his efforts to get counseling and mentoring. This is the right course for him to take, but we cannot open the door to reinstatement at this time.

¶26 A lawyer shall not knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists.[59] A willful disregard of a suspension order is a serious matter that will not be tolerated by this Court. Compliance with Rule 9.1, RGDP, is not optional. The Respondent willfully failed to comply with Rule 9.1, RGDP, including after he was notified of a grievance based upon that very rule. The Respondent's other misconduct is also disturbing, i.e., lack of candor to Judge Ogden and allowing his retainer fees to be paid to a non-lawyer.

CONCLUSION

¶27 After considering all the mitigating circumstances, we find an appropriate discipline is to suspend the Respondent from the practice of law for six months from the date of this opinion. If the Respondent applies for reinstatement in the future, in addition to any other requirements related to his MCLE suspension, he shall prove he has withdrawn from the following cases: Tymofichuk v. Ian's Enterprise, LLC, Oklahoma County Dist. Ct. Case No. CJ-2015-6883; Ian's Enterprise, LLC v. Stuart et al., Oklahoma County Dist. Ct. Case No. CS-2017-1941. Ian's Enterprise, LLC was the client in both cases and the record reflects this client was notified of his suspension, although not by certified mail, however, no motion to withdraw has been filed in either case and the status of these cases appears either pending or inconclusive. The Complainant's application to assess the costs of this proceeding in the amount of $1,046.29 is granted. The Respondent is ordered to pay the assessed amount within sixty days.

RESPONDENT'S LICENSE TO PRACTICE LAW SUSPENDED FOR SIX 
MONTHS; THE APPLICATION FOR COSTS GRANTED.

¶28 Gurich, C.J., Darby, V.C.J., Kauger, Winchester, Edmondson, Colbert and Combs, JJ., concur.

FOOTNOTES

[1] Mr. Sanger did not file an Entry of Appearance or an Answer Brief in this case, however, the record shows he filed a Response to the Amended Complaint and later represented the Respondent at the November 13, 2018, hearing before the Trial Panel.

[2] Comp. Ex. 45; Tr. of proceedings Nov. 13, 2018 at 46, 56.

[3] Tr. of proceedings Nov. 13, 2018 at 46-47.

[4] Id. at 16.

[5] Id.

[6] Id.

[7] Id. at 16, 50.

[8] Id. at 50.

[9] Id. at 17.

[10] Id.

[11] Id.

[12] Id. at 18.

[13] Id. The testimony indicated he did not know at that time that he could apply for a "hardship" with the OBA in order to meet his MCLE requirements but, after the subject grievances were filed against him, he has done so and has been working on "get[ting] up to speed" with his MCLE requirements. Id. at 18-19.

[14] Comp. Ex. 1.

[15] Comp. Ex. 2; 2017 OK 45, SCBD 6511.

[16] Comp. Ex. 3.

[17] Tr. of proceedings Nov. 13, 2018 at 11.

[18] 2018 OK 48, SCBD 6511.

[19] 2018 OK 44, SCBD 6659.

[20] Comp. Ex. 45; Tr. of proceedings Nov. 13, 2018 at 43.

[21] Tr. of proceedings Nov. 13, 2018 at 56, 89.

[22] Resp. Ex. 1 at 3; Tr. of proceedings Nov. 13, 2018 at 11.

[23] Ian's Enterprise, LLC v. Lewis, Oklahoma County Dist. Ct. Case No. CJ-2015-6205 (motion to withdraw filed Sept. 24, 2018, granted Oct. 10, 2018); Ian's Enterprise, LLC v. Ruzycki, et al., Oklahoma County Dist. Ct. Case No. CJ-2015-6300 (motion to withdraw filed Sept. 4, 2018, granted Sept. 24, 2018); Ian's Enterprise, LLC v. Rollerson, Oklahoma County Dist. Ct. Case No. CJ-2015-6752 (motion to withdraw filed March 16, 2018, granted Sept. 24, 2018); Tymofichuk v. Ian's Enterprise, LLC, Oklahoma County Dist. Ct. Case No. CJ-2015-6883 (no motion to withdraw filed; the status of this case is inconclusive; no judgment has yet been filed); Ontiveros v. Freeman, et al., Oklahoma County Dist. Ct. Case No. CJ-2016-4046 (no motion to withdraw filed; journal entry of judgment filed Aug. 9, 2017); Advanced Restoration & Contracting, LLC, v. Clanton et al., Oklahoma County Dist. Ct. Case No. CJ-2016-4597 (motion to withdraw filed Oct. 15, 2018, and another on Oct. 16, 2018, granted Oct. 17, 2018); Ian's Enterprise, LLC v. Greer, et al., Oklahoma County Dist. Ct. Case No. CJ-2016-4943 (motion to withdraw filed Sept. 4, 2018, and another on Oct. 10, 2018, granted Oct. 15, 2018); Clanton v. Penn, Oklahoma County Dist. Ct. Case No. CJ-2016-4944 (no motion to withdraw filed; dismissed with prejudice on July 27, 2018); Ian's Enterprise, LLC v. Crump, Oklahoma County Dist. Ct. Case No. CJ-2016-4945 (motion to withdraw filed Sept. 24, 2018, granted Sept. 24, 2018); Ian's Enterprise, LLC v. Hoskins, et al., Oklahoma County Dist. Ct. Case No. CJ-2016-4946 (no motion to withdraw filed; order of dismissal for failure to prosecute filed Sept. 10, 2018); Dodd v. Sullivan, et al., Oklahoma County Dist. Ct. Case No. CJ-2017-498 (no motion to withdraw filed; journal entry of judgment filed May 17, 2017, but vacated Oct. 23, 2017; second journal entry of judgment filed Dec. 19, 2017); Colbert v. Farmers Insurance Co., Inc. et al., Oklahoma County Dist. Ct. Case No. CJ-2017-999 (no motion to withdraw filed; order of dismissal for failure to obtain service filed Sept. 27, 2018); Martin v. Ian's Enterprise, LLC et al., Oklahoma County Dist. Ct. Case No. CJ-2017-1386 (motion to withdraw filed Sept. 4, 2018, granted Sept. 24, 2018); Ian's Enterprise, LLC v. Stuart et al., Oklahoma County Dist. Ct. Case No. CS-2017-1941 (no motion to withdraw filed; case appears to be pending); Sunstate Equipment Co., LLC v. Red River Landscaping & Construction, LLC, Oklahoma County Dist. Ct. Case No. CJ-2016-5182 (no motion to withdraw or order granting withdraw was filed; however, the trial court's Oct. 26, 2017, order allowed the Respondent's client (defendant) to obtain new counsel within 33 days, this was not done and default judgment was granted to the plaintiff on Dec. 21, 2017); Altom v. State Farm Fire & Casualty Company, United States District Court, Western District of Oklahoma Case No. 5:17-CV-00566-F (motion to withdraw filed July 10, 2017, granted July 11, 2017).

[24] Tr. of proceedings Nov. 13, 2018 at 12.

[25] See note 23, supra.

[26] Id.; Tymofichuk v. Ian's Enterprise, LLC, Oklahoma County Dist. Ct. Case No. CJ-2015-6883; Ian's Enterprise, LLC v. Stuart et al., Oklahoma County Dist. Ct. Case No. CS-2017-1941.

[27] Respond. Ex. 1; Ian's Enterprise, LLC v. Lewis, Oklahoma County Dist. Ct. Case No. CJ-2015-6205; Ian's Enterprise, LLC v. Ruzycki, et al., Oklahoma County Dist. Ct. Case No. CJ-2015-6300; Ian's Enterprise, LLC v. Rollerson, Oklahoma County Dist. Ct. Case No. CJ-2015-6752; Tymofichuk v. Ian's Enterprise, LLC, Oklahoma County Dist. Ct. Case No. CJ-2015-6883; Ontiveros v. Freeman, et al., Oklahoma County Dist. Ct. Case No. CJ-2016-4046; Ian's Enterprise, LLC v. Greer, et al., Oklahoma County Dist. Ct. Case No. CJ-2016-4943; Ian's Enterprise, LLC v. Crump, Oklahoma County Dist. Ct. Case No. CJ-2016-4945; Ian's Enterprise, LLC v. Hoskins, et al., Oklahoma County Dist. Ct. Case No. CJ-2016-4946; Martin v. Ian's Enterprise, LLC et al., Oklahoma County Dist. Ct. Case No. CJ-2017-1386.

[28] See note 23, supra; Dodd v. Sullivan, et al., Oklahoma County Dist. Ct. Case No. CJ-2017-498; Colbert v. Farmers Insurance Co., Inc. et al., Oklahoma County Dist. Ct. Case No. CJ-2017-999.

[29] Tr. of proceedings Nov. 13, 2018 at 33; Altom v. State Farm Fire & Casualty Company, United States District Court, Western District of Oklahoma Case No. 5:17-CV-00566-F.

[30] Respond. Ex. 1; Advanced Restoration & Contracting, LLC, v. Clanton et al., Oklahoma County Dist. Ct. Case No. CJ-2016-4597; Clanton v. Penn, Oklahoma County Dist. Ct. Case No. CJ-2016-4944.

[31] Tr. of proceedings Nov. 13, 2018 at 12.

[32] Ian's Enterprise, LLC v. Stuart et al., Oklahoma County Dist. Ct. Case No. CS-2017-1941.

[33] Comp. Ex. 22.

[34] Comp. Ex. 26.

[35] Comp. Ex. 27.

[36] Id. at OBA 146.

[37] Id. at OBA 147.

[38] Id.

[39] Id.

[40] Tr. of proceedings Nov. 13, 2018 at 30-31.

[41] Comp. Ex. 22.

[42] Tr. of proceedings Nov. 13, 2018 at 60.

[43] Id.

[44] Comp. Ex. 35.

[45] Comp. Ex. 36.

[46] Tr. of proceedings Nov. 13, 2018 at 37.

[47] Comp. Ex. 35.

[48] Id.

[49] Tr. of proceedings Nov. 13, 2018 at 27.

[50] Resp. Ex. 1.

[51] Comp. Ex. 32.

[52] Dec. 19, 2017; Dodd case, signing of the second journal entry of judgment.

[53] Comp. Brief at 12; Tr. of proceedings Nov. 13, 2018 at 97-98.

[54] Tr. of proceedings Nov. 13, 2018 at 6.

[55] Id. at 35.

[56] Id. at 12.

[57] Comp. Brief at 13; Trial Panel Report at 8.

[58] State ex rel. Oklahoma Bar Ass'n v. Running, 2011 OK 75, ¶14, 262 P.3d 736.

[59] Rule 3.4 (c), ORPC.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 2001 OK 26, 23 P.3d 268, 72 OBJ 832, STATE ex. rel. OKLAHOMA BAR ASSN. v. BOLUSKY
Discussed
 2001 OK 51, 28 P.3d 551, 72 OBJ 1921, STATE ex. rel. OKLAHOMA BAR ASSN. v. PATTERSON
Discussed at Length
 1995 OK 25, 895 P.2d 707, 66 OBJ 1108, State ex rel. Oklahoma Bar Assn. v. Holden
Discussed
 1995 OK 106, 914 P.2d 644, 66 OBJ 3187, State ex rel. Oklahoma Bar Assn. v. Eakin
Discussed
 2006 OK 38, 142 P.3d 383, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. MALLOY
Discussed at Length
 2009 OK 31, 212 P.3d 1186, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. KINSEY
Discussed
 2011 OK 75, 262 P.3d 736, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. RUNNING
Discussed at Length
 2012 OK 44, 277 P.3d 1269, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. TOWNSEND
Discussed
 2017 OK 1, AMENDMENT TO RULES GOVERNING DISCIPLINARY PROCEEDINGS
Discussed
 2017 OK 45, IN THE MATTER OF THE SUSPENSION OF MEMBERS OF THE OKLAHOMA BAR ASSOCIATION
Cited
 2018 OK 44, IN THE MATTER OF THE SUSPENSION OF MEMBERS OF THE OKLAHOMA BAR ASSOCIATION
Cited
 2018 OK 48, IN THE MATTER OF THE STRIKING OF NAMES OF MEMBERS OF THE OKLAHOMA BAR ASSOCIATION
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA